Opinion issued May 29, 2008


 











In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00812-CV






CITY OF PASADENA, Appellant


V.


ROLAND C. KUHN, Appellee






On Appeal from the 80th District Court

Harris County, Texas

Trial Court Cause No. 2006-11181






O P I N I O N


 Appellant, the City of Pasadena (the "City"), challenges the trial court's order
that denied its plea to the jurisdiction in favor of appellee, Roland C. Kuhn. In one
issue on appeal, the City argues that the trial court erred in denying its plea to the
jurisdiction.

 We reverse and render.

Background

 On March 22, 2004, Kuhn's vehicle collided with Officer Michael F. Matela
of the Pasadena Police Department, who was driving an emergency vehicle to a house
fire. Kuhn filed suit against the City and Officer Matela. The City answered and
filed a plea to the jurisdiction. Kuhn filed an amended petition and a response to the
plea to the jurisdiction. After a hearing, the trial court denied the City's plea to the
jurisdiction and dismissed Officer Matela from the proceedings. 

Plea to the Jurisdiction


 A plea to the jurisdiction challenges the trial court's authority to determine the
subject matter of the action. See Tex. Dep't of Transp. v. Jones, 8 S.W.3d 636, 638
(Tex. 1999). The standard of review of an order granting a plea to the jurisdiction
based on governmental immunity is de novo. Tex. Natural Res. Conservation
Comm'n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002); Mayhew v. Town of Sunnyvale,
964 S.W.2d 922, 928 (Tex. 1998). It is the plaintiff's burden to allege facts that
affirmatively establish the trial court's subject matter jurisdiction. See Tex. Ass'n of
Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993). In determining
whether the plaintiff has met this burden, we look to the allegations in the plaintiff's
pleadings, accept them as true, and construe them in favor of the plaintiff. See Tex.
Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004). While we
must construe the allegations in favor of the plaintiff, we are not bound by legal
conclusions. Tex. Natural Res. & Conservation Comm'n v. White, 13 S.W.3d 819,
822 (Tex. App.--Fort Worth 2000), rev'd on other grounds, 46 S.W.3d 864 (Tex.
2001); Tex. Parks & Wildlife Dep't v. Garrett Place, Inc., 972 S.W.2d 140, 143 (Tex.
App.--Dallas 1998, no pet.); Salazar v. Morales, 900 S.W.2d 929, 932 (Tex.
App.--Austin 1995, no pet.). When deciding a plea to the jurisdiction, we must
consider evidence "when necessary to resolve the jurisdictional issues raised." Bland
Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 555 (Tex. 2000). 

 The Texas Supreme Court has explained the approach to be taken when a
governmental entity challenges the jurisdictional facts and the scope of that entity's
burden:

Then, in a case in which the jurisdictional challenge implicates the
merits of the plaintiffs' cause of action and the plea to the jurisdiction
includes evidence, the trial court reviews the relevant evidence to
determine if a fact issue exists. The United States Supreme Court and
all of the federal circuits have authorized federal district courts to
consider evidence in deciding motions to dismiss for lack of subject
matter jurisdiction. If the evidence creates a fact question regarding the
jurisdictional issue, then the trial court cannot grant the plea to the
jurisdiction, and the fact issue will be resolved by the fact finder. 
However, if the relevant evidence is undisputed or fails to raise a fact
question on the jurisdictional issue, the trial court rules on the plea to the
jurisdiction as a matter of law. 


Miranda, 133 S.W.3d at 227-28 (internal citations omitted). The supreme court then
stated, "We acknowledge that this standard generally mirrors that of a summary
judgment under Texas Rule of Civil Procedure 166a(c)." Id. at 228. The Texas
Supreme Court recognized that the procedure in such situations parallels summary
judgment practice. Id. The court explained, "By requiring the [governmental entity]
to meet the summary judgment standard of proof in cases like this one, we protect the
plaintiffs from having to put on their case simply to establish jurisdiction." Id. If
there is no fact question on the jurisdiction issue, the trial court will rule on the plea
to the jurisdiction as a matter of law. Id. at 227-28. Likewise, reviewing
jurisdictional determinations may require appellate courts to examine the evidence
supporting a claim in the same de novo manner it reviews a summary judgment. Id.
at 228.

Governmental Immunity


 In its sole issue, the City asserts that Kuhn's suit is barred by the principle of
governmental immunity and that Kuhn has not pleaded sufficient facts to overcome
this immunity.

 Governmental immunity protects political subdivisions of the State from suit,
unless immunity from suit has been waived. See Gen. Servs. Comm'n v. Little-Tex
Insulation Co., 39 S.W.3d 591, 594 (Tex. 2001). Governmental immunity inures to
the benefit of a municipality insofar as the municipality engages in the exercise of
governmental functions, except when that immunity has been waived. Fort Worth
Indep. Sch. Dist. v. City of Fort Worth, 22 S.W.3d 831, 840 (Tex. 2000).

 Governmental immunity from suit defeats a trial court's subject-matter
jurisdiction and is properly asserted in a plea to the jurisdiction. Tex. Dep't of
Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999). Generally, a party suing a
governmental entity must establish consent to sue, which may be alleged by reference
either to a statute or to express legislative permission. See Mo. Pac. R.R. Co. v.
Brownsville Navigation Dist., 453 S.W.2d 812, 814 (Tex. 1970). The Texas Tort
Claims Act (the "Act") waives immunity from liability and suit in a number of
circumstances. See Tex. Civ. Prac. & Rem. Code Ann. § 101.021-.025 (Vernon
2005). However, the Act also includes a subchapter entitled "Exceptions and
Exclusions" listing circumstances in which its waiver provisions do not apply. See
id. §§ 101.051-.066. 

 Kuhn's original petition alleged that the City and Officer Matela were liable
pursuant to section 101.021 of the Act, which provides that a governmental unit is
liable for personal injury arising from the operation of a motor vehicle that is
proximately caused by the wrongful act of an employee acting within the scope of his
employment. (1) See Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (Vernon 2005). 
Kuhn alleged that the City and Officer Matela waived their immunity pursuant to
section 101.025 of the Act, which provides that a governmental unit may be sued for
damages allowed by the Act. (2) See id. § 101.025 (Vernon 2005). However, an
exception in section 101.055(2) of the Act governs emergency situations:

This chapter does not apply to a claim arising . . . from the action of an
employee while responding to an emergency call or reacting to an
emergency situation if the action is in compliance with the laws and
ordinances applicable to emergency action, or in the absence of such a
law or ordinance, if the action is not taken with conscious indifference
or reckless disregard for the safety of others. . . .


Id. § 101.055(2) (Vernon 2005) (emphasis added). Finally, section 545.156 of the
Transportation Code provides that, on the immediate approach of an emergency
vehicle using audible and visual signals, an operator, unless otherwise directed by a
police officer, shall yield the right-of-way, immediately pull over to the of the
roadway clear of any intersection, and stop and remain standing until the emergency
vehicle has passed. (3) See Tex. Transp. Code Ann. § 545.156 (Vernon 1999). 

 In his amended petition, Kuhn alleged,

 [T]he actions of Officer Matela [were] reckless. The act of
entering a blind intersection at a high enough rate of speed to be unable
to stop his vehicle or avoid an accident with [Kuhn's] vehicle carries a
high degree of risk of serious injury. These facts are bolstered by the
outcome of this accident. [Kuhn] suffered severe and permanent injury
requiring at least one surgery. Said acts are in direct violations of
Transportation Code [section] 545.156(b) in that the officer failed to
give due regard for the safety of [Kuhn]. These actions were a
proximate cause of the damages suffered by [Kuhn]. 


 The City's plea to the jurisdiction argued that the City maintained its immunity
from suit because Kuhn did not plead or prove that Officer Matela's actions were
reckless. (4) In his response to the City's plea, Kuhn attached photographic evidence
to show that the intersection where the accident occurred was "blind" from Officer
Matela's and Kuhn's standpoint. Kuhn stated, "There is a hedge row, a building, a
marquee, as well as parked cars in the lot on the corner. As the series [of pictures]
progress, it becomes clear that the cross street is blind until just before the
intersection." Kuhn argued, "Obviously when an emergency vehicle proceeds
through an intersection on a red light, there is the potential for a collision with a
vehicle crossing the intersection on the green light." He stated,

A police officer responding to an emergency at a rate of speed of at least
40 miles per hour, attempting to cross an intersection on a red light
either knows, or certainly should know of the high degree of risk of
serious injury if he has an accident with a vehicle traveling across his
path at 40 miles per hour. This is especially true on a blind intersection. 


Kuhn's response also emphasized that the intersection was not a "right angle"
intersection, and, therefore, "The configuration of this intersection is dangerous and
certainly dangerous to enter through a red light at a high rate of speed." 

 Kuhn also argued that, because Officer Matela claimed that he slowed and
stopped before entering the intersection, he must have been reckless because "[i]f the
officer stopped his vehicle and then accelerated to a speed capable of causing the
damage as indicated in the photographs and as listed on the accident report, then he
must have accelerated at a very reckless rate into a blind intersection." Kuhn pointed
out that Officer Matela's speed at the intersection was unclear because Officer
Matela's statement conflicted with a witness's statement that Officer Matela merely
slowed down. From this, Kuhn argued, "We know he was traveling with lights and
siren so it is easy to conclude he was traveling faster than the posted 40 miles per
hour speed limit on Red Bluff." In response to the City's plea to the jurisdiction,
Kuhn concluded, "Certainly, the rate of speed and configuration of the intersection
can lead a reasonably minded fact finder to conclude, from the minimum evidence
that we have at this point, that the Officer may have been acting without due regard
to the safety of the Plaintiff." 

 Kuhn also included an affidavit in which he stated, 

 I was traveling east bound on Spencer Highway on my way
through the intersection of Red Bluff and Spencer Highway. As I
approached the intersection, I noted that I had the green light. Nothing
looked out of place. There were no cars stopped ahead of me except for
those that were going to make a left turn on to Red Bluff. You cannot
see the south bound lane of Red Bluff from my direction. It is blocked
by a hedge row, a store and a parking lot. There were also several cars
waiting to turn left onto Red Bluff, further blocking my view of Red
Bluff. The road is at a weird ang[le] to Spencer Highway. It runs at
about a 45 degree ang[le] from the left of Spencer Highway east bound. 
I did not hear any emergency vehicles as I approached the intersection.


 I was struck by Officer Matela's patrol car on the left side of my
truck and spun around violently. His car struck me, I did not strike him. 
There was no damage to the front of my vehicle. It was a very hard
impact. It seemed to me like he was traveling at a very high rate of
speed. I never saw him coming. Other evidence in the record included an accident report which indicated that
Officer Matela entered the intersection on a red light. Kim Hickmas, a witness to the
accident, stated that the police officer was coming down Red Bluff with lights and
sirens activated. Another witness, Teri Peterson, stated that Officer Matela entered
the intersection with his lights and siren on and that he slowed down before he
entered the intersection. A document from the Pasadena Police Officer Department,
signed by the Chief of Police, showed that it concluded that "Policies and
Procedures" were followed in the accident and that no further action was to be taken. 
The Accident Review Board also found that Officer Matela followed departmental
policies and procedures. 

 Sergeant R.G. Johnston stated that Officer Matela said that he was using 

 emergency equipment while enroute to a house fire at 7100
Sprague. He further stated that he was southbound in the middle
lane of 5500 Red Bluff and as he approached the intersection he
slowed down then stopped because it was a red signal light. He
also stated that he then proceeded through the intersection and
struck Mr. Kuhn's vehicle. 


 Officer G.D. Dosckocil stated, 

 Officer Matela had all the unit's emergency equipment activated
prior to approaching the intersection of Red Bluff @ Spencer. 
Officer Matela slowed his unit upon approach to the intersection. 
He checked to make sure the visible traffic had responded to his
emergency equipment and yielded. He proceeded into the
intersection on a red light, as he crossed the eastbound lanes of
Spencer a white 1999 Ford Explorer failed to yield and crossed
the intersection in front of the unit. 


 Officer Matela stated,

 I was responding to a house fire at 7106 Sprague. I was driving
my take home patrol unit #307 southbound (middle lane) on Red
Bluff approaching the intersection of 5400 Red Bluff @ 6800
Spencer with my emergency equipment (lights/siren) activated. 
I slowed and stopped in the middle of the intersection and looked
both ways (east/west) for vehicle traffic. (5) Traffic was stopped
and appeared to be clear when I proceeded through the
intersection. I was then struck in the intersection by a white,
1999, Ford Explorer . . . that was traveling eastbound on Spencer. 


 In determining whether Kuhn pled a proper waiver of immunity, we analyze
whether Kuhn alleged and presented evidence that Officer Matela acted in "conscious
indifference" to or "reckless disregard" for the safety of others. See Tex. Civ. Prac.
& Rem. Code Ann. § 101.055(2). Because these terms are not defined in the statute,
we give each its ordinary meaning. Tex. Gov't Code Ann. § 312.002 (Vernon
2005); City of San Antonio v. Hartman, 201 S.W.3d 667, 672 n.19 (Tex. 2006);
Pakdimounivong v. City of Arlington, 219 S.W.3d 401, 411 (Tex. App.--Fort Worth
2006, pet. denied). The supreme court has stated that the "reckless disregard" test
"requires a showing of more than a momentary judgment lapse" and that "[t]o recover
damages resulting from the emergency operation of an emergency vehicle, a plaintiff
must show that the operator has committed an act that the operator knew or should
have known posed a high degree of risk of serious injury." City of Amarillo v.
Martin, 971 S.W.2d 426, 429-30 (Tex. 1998). More recently, the Texas Supreme
Court has stated that the terms "conscious indifference" and "reckless disregard"
"require proof that a party knew the relevant facts but did not care about the result." 
Hartman, 201 S.W.3d at 672 n.19. 

 The undisputed evidence shows that Officer Matela was responding to a house
fire, an emergency condition. Before entering the intersection of Red Bluff and
Spencer, Officer Matela had activated his emergency lights and siren. The
undisputed evidence further shows that Officer Matela slowed down before
proceeding through the intersection. (6) After slowing down to make certain it was safe,
Officer Matela attempted to cross the intersection and collided with Kuhn. Other
courts have determined that evidence of the type presented here is insufficient to
show reckless conduct as a matter of law. See Pakdimounivong, 219 S.W.3d at
411-12 (holding that officers' actions were not taken with conscious indifference or
reckless disregard for safety of deceased when no evidence showed that officers did
not care what happened to deceased); Smith v. Janda, 126 S.W.3d 543, 545-46 (Tex.
App.--San Antonio 2003, no pet.) (holding that evidence insufficient to establish
recklessness when ambulance driven to emergency with lights and sirens activated
as it approached intersection, other drivers at intersection could hear and see sirens
and lights, ambulance driver slowed down and looked around and then proceeded into
intersection without coming to complete stop); City of San Angelo Fire Dept. v.
Hudson, 179 S.W.3d 695, 701-02 (Tex. App.--Austin 2005, no pet.) (holding no
evidence of reckless disregard for safety of others when officer entered intersection
without stopping and witness did not hear brakes being applied). We agree with the
City that Kuhn's allegations and evidence, which is similar to the evidence presented
in Pakdimounivong, Smith, and Hudson, do not show that Officer Matela's actions
were taken with conscious indifference or reckless disregard for the safety of Kuhn. 

 Because the City showed that the trial court lacked subject matter jurisdiction,
the burden shifted to Kuhn to show a disputed material fact. See Miranda, 133
S.W.3d at 227-28. Kuhn alleged that Officer Matela was reckless for entering a
"blind" intersection. Specifically, on appeal, Kuhn states, "There is a hedge row, a
building, a marquee, as well as parked cars in the lot on the corner" that would
preclude Officer Matela or Kuhn from seeing any approaching vehicles "until just
before the intersection." Whether the intersection is blind does not create a material
fact issue here in light of the undisputed testimony that Officer Matela had on his
emergency lights and siren and that he slowed before entering the intersection. Any
intersection that an officer attempts to traverse when responding to an emergency is
potentially a "blind intersection." That is why the statute provides that an emergency
vehicle may proceed through a stop light after "slowing as necessary." See Tex.
Transp. Code Ann. § 546.001(2). The undisputed evidence shows that Officer
Matela followed those procedures. (7) 

 Kuhn also argued that the impact showed that Officer Matela was reckless. 
However, neither the fact that Kuhn's vehicle sustained damage nor the fact that
Kuhn was injured raises a fact issue as to whether Officer Matela lacked regard for
the safety of others. See Hudson, 179 S.W.3d at 702 (holding that conclusory
observation that "large pumper truck 'slammed' into . . . car 'full force' does not
provide evidence raising a fact issue about [officer's] regard for the safety of others
or whether he slowed as necessary."). Kuhn also argues that Officer Matela was
reckless because he was driving at a high rate of speed. No evidence supports Kuhn's
conclusion, and we note that the trial court sustained the City's objections to the
evidence regarding Officer Matela's rate of speed. Other than Kuhn's conclusory
statements that Officer Matela was driving at a high rate of speed, no proper evidence
established Officer's Matela's rate of speed in relation to the damage sustained by the
two vehicles. 

 Accordingly, we hold that Kuhn has not demonstrated a material fact issue
regarding the jurisdictional issue. We therefore conclude that the City retains its
immunity as a matter of law. 

 We sustain the City's sole issue.

 Conclusion


 We reverse the order of the trial court that denied the City's plea to the
jurisdiction and render judgment that the case be dismissed. 





 Evelyn V. Keyes

 Justice


Panel consists of Justices Taft, Keyes, and Alcala.
1. Section 101.021 provides, in relevant part, 


 A governmental unit in the state is liable for: 


 (1) property damage, personal injury, and death proximately caused
by the wrongful act or omission or the negligence of an
employee acting within his scope of employment if:

 

 (A) the property damage, personal injury, or death arises
from the operation or use of a motor-driven vehicle or
motor-driven equipment.


Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1)(A) (Vernon 2005).
2. Section 101.025 provides,

 

 (a) Sovereign immunity to suit is waived and abolished to the extent
of liability created by this chapter.


 (b) A person having a claim under this chapter may sue a
governmental unit for damages allowed by this chapter.


Id. § 101.025 (Vernon 2005).
3. Section 545.156 provides,


 (a) On the immediate approach of an authorized emergency vehicle
using audible and visual signals that meet the requirements of
Sections 547.305 and 547.702, or of a police vehicle lawfully
using only an audible signal, an operator, unless otherwise
directed by a police officer, shall:


 (1) yield the right-of-way;


 (2) immediately drive to a position parallel to and as close as
possible to the right-hand edge or curb of the roadway
clear of any intersection; and


 (3) stop and remain standing until the authorized emergency
vehicle has passed.

 

 (b) This section does not exempt the operator of an authorized
emergency vehicle from the duty to drive with due regard for the
safety of all persons using the highway.


Tex. Transp. Code Ann. § 545.156 (Vernon 1999).
4. The City did not attach any evidence to its plea to the jurisdiction. However, the
parties entered into a Rule 11 agreement that detailed the evidence in the record for
the trial court's consideration in ruling on the plea. Thus, we disagree with Kuhn's
statement on appeal that "[t]here is no evidence for this court to review in support of
the Appellant's position." 
5. Section 546.001 provides that when operating an authorized emergency vehicle, the
operator "may proceed past a red or stop signal or stop sign, after slowing as
necessary for safe operation." Tex. Transp. Code Ann. § 546.001(2) (Vernon 1999).
6. Some evidence suggested that Officer Matela actually stopped before proceeding
through the intersection. Whether he stopped or slowed makes no difference. Officer
Matela was only required to slow as necessary for safe operation. See Tex. Transp.
Code Ann. § 546.001(2). 
7. "The Legislature has determined that the public good will be better served by
encouraging public employees to take immediate action in emergency situations,
rather than by suing them later if their actions were imprudent." City of San Antonio
v. Hartman, 201 S.W.3d 667, 673 (Tex. 2006). The supreme court has noted the
double standard for liability between emergency vehicle operators and civilian drivers
with the heavier burden on civilian drivers. City of Amarillo v. Martin, 971 S.W.2d
426, 431 (Tex. 1998). The policy considerations for the heavier burden are:

 

 First, emergency vehicle operators typically face more exigent
circumstances than do civilian drivers. Emergency vehicle operators
are charged with protecting the public's health, safety, and property,
and a few minutes or even seconds can make the difference between
life and death. 


 Second, civilian drivers generally have an advantage when it comes to
anticipating and preventing a collision. Under most circumstances, the
lights, sirens, and distinctive coloring of an emergency vehicle make it
stand out from the others; by contrast, the vehicle with which the
emergency vehicle is on course to collide too easily blends in with the
other traffic. . . .


 Third, emergency vehicle operators must routinely make risky judgment
calls in emergency situations. It is unfortunate that some civilian
drivers are less than vigilant in abiding by their duties to keep a lookout
for and to yield to emergency vehicles, but emergency vehicle operators
are entitled to presume that other drivers will respect emergency
priorities.


Martin, 971 S.W.2d at 431-32.