Crisha **PAKDIMOUNIVONG**, Individually, and as Next Friend of Kadin V. Pakdimounivong and Keane V. Pakdimounivong, Minor Children and On Behalf of The Estate of Vattana Pakdimounivong, Khamsy Pakdimounivong and Vansamouth Pakdimounivong, Appellants,

v.

**THE CITY OF ARLINGTON, Appellee.**

No. 2–05–414–CV.

Court of Appeals of Texas, Fort Worth.

Nov. 30, 2006.

Rehearing Overruled and Reconsideration En Banc Denied Jan. 18, 2007.

Rehearing Overruled and Reconsideration En Banc Denied March 15, 2007.

Michael Freden and Charles M. Noteboom, Hurst, for appellants.

Frank Waite and Melinda H. Barlow, Asst. City Attys., Arlington, for appellee.

Panel B: DAUPHINOT, GARDNER, and McCOY, JJ.

## OPINION

BOB McCOY, Justice.

### I. Introduction

In four issues, Appellants Crisha Pakdimounivong, Individually, and as Next Friend of Kadin V. Pakdimounivong and Keane V. Pakdimounivong, minor children and on Behalf of the Estate of Vattana Pakdimounivong ("Vattana"), Khamsy Pakdimounivong and Vansamouth Pakdimouniv (collectively "Crisha") assert that the trial court erred (1) by concluding that Crisha did not allege injury from the operation or use of a motor vehicle after she pleaded and offered evidence that Vattana was run over by two different Arlington police cars driven by two different Arlington police officers, (2) by concluding that Crisha did not allege injury from the condition or use of tangible personal or real property when she pleaded that Vattana's injuries were proximately caused by improper application of handcuffs and leg restraints and when the trial court made a finding of fact that Arlington officers had in fact applied handcuffs and leg restraints to him prior to the incident in question, (3) by refusing to make requested additional findings of fact and conclusions of law on ultimate facts that impact Crisha's ability to properly appeal the trial court's order, and (4) by considering factual allegations made by Arlington in an unverified plea. We affirm.

### II. Background

In October 2003, Vattana was involved in an automobile accident in Arlington, Texas that was investigated by that city's police officers. During the investigation, Vattana became highly combative resulting in two altercations with the officers and resulting in at least five officers participating in the subduing and restraining of Vattana. During the incident, Vattana had to be pepper sprayed, placed in handcuffs, and taken into custody at the scene of the accident. He was initially placed in an Arlington police car to be driven by Officer Vire. Vattana kicked out the window of this car before the car left the scene of the accident and was removed from this car. Although the majority of the testimony was that Vattana was subsequently re-

strained in a second patrol car driven by Officer Haven, there was later some dispute as to whether leg restraints were properly applied to him when he was placed in Officer Haven's patrol car. This car, driven by Officer Haven, along with two other patrol cars, began transporting Vattana to jail with Officer Haven's vehicle in the lead, followed by a vehicle driven by Officer Vire, and the third car driven by Officer Grimmett.

According to Officer Vire, as he was driving eastbound on I–20, behind Officer Haven's vehicle, he thought he saw Vattana banging his head on the rear driver's side window. He began to pick up his police radio microphone to let dispatch know. However, Officer Haven got on the radio prior to him. After Officer Vire saw Vattana hit the window with his head, he saw what appeared to be Vattana kicking at the window. He was approximately two car lengths from Officer Haven's vehicle at that point. After the kicking, he saw sparkles in the air, which was glass shattering. Immediately, he saw a blur in front of his vehicle down at the bumper. He was not able to brake, swerve or react in any way to the blur. Officer Vire felt his vehicle hit the blur and realized it was Vattana. Only a few seconds passed from the time the window shattered until he saw the blur. He did not know that it was possible for Vattana to jump out of the car, and did not believe that Vattana would jump out onto the highway. Officer Vire thought Vattana was simply trying to damage the car, not escape. If he had seen Vattana coming out of the window, he testified that he would have attempted to take some evasive action. However, he didn't know that he would have had enough time to react to the situation.

According to Officer Grimmett, he testified that just prior to the accident involving Vattana, he was proceeding eastbound on I–20 behind Officer Vire with Officer Haven in the lead and Vattana in the backseat of Officer Haven's vehicle. Officer Grimmett testified he believed that he first knew something was wrong when he saw Officer Haven's overhead lights come on and heard Officer Haven on the radio stating something to the effect that Vattana had kicked out the window of his patrol car. As soon as he saw that Officer Haven's overhead lights were on, he and Officer Vire followed Officer Haven towards the shoulder. Officer Grimmett was decreasing his speed as he went to the shoulder. He saw in the roadway what appeared to be a body, a split second before he ran over Vattana. When Officer Grimmett saw Vattana in the roadway, he had no opportunity to swerve and he was already braking. Officer Grimmett further testified that as he was behind Officers Haven and Vire, it never entered his mind that Vattana could actually get out of the vehicle once the window was smashed. His immediate thought was that he and the other officers were going to be struggling on the side of the road to secure Vattana again. Officer Grimmett did not know that Vattana had escaped from the leg restraints until after his vehicle hit him.

According to Officer Haven, as he began transporting Vattana, he looked in his rearview mirror and saw Vattana spitting and he requested Vattana to not spit. As he traveled onto I–20, Officer Haven looked in his rearview mirror at Vattana who was seated upright looking down. As Officer Haven was driving, he heard a loud crash and immediately picked up the radio and activated his emergency lights while attempting to get to the side of the road. Between leaving the scene of the arrest and the time that Vattana kicked out the window of the moving vehicle and jumped onto the roadway, a maximum of two minutes and twenty-two seconds elapsed.

During that time, Officer Haven checked on Vattana through his rearview mirror twice and Vattana was seated upright and not moving. Officer Haven does not know how Vattana freed himself so quickly from the vehicle nor did he see him jump out the window of the vehicle. It was only a matter of seconds from Officer Haven hearing the loud crash of the window being kicked out and the officer moving to the side of the road and getting out of his vehicle.

All of the officers involved in the transport testified as to the sudden, unexpected, and very quick escape of Vattana onto the highway and that they had no time to react. The vehicles driven by Officer Vire and by Officer Grimmett both ran over Vattana, resulting in Vattana's death. An autopsy confirmed that Vattana had methamphetamines in his system at the time of his death, which may explain the extreme behavior described by officers that led to his death.

Chrisha sued the City of Arlington ("Arlington"), which filed a plea to the jurisdiction. The plea was granted by the trial court and this appeal resulted.

### III. Standard of Review

#### A. Plea to the Jurisdiction

▆▆▆ A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of the action. *See Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999). The standard of review of an order granting a plea to the jurisdiction based on governmental immunity is de novo. *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002); *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex. 1998), *cert. denied,* 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999). It is the plaintiff's burden to allege facts that affirmatively establish the trial court's subject

matter jurisdiction. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). In determining whether the plaintiff has met this burden, this court is to look to the allegations in the plaintiff's pleadings, accept them as true, and construe them in favor of the plaintiff. *See Univ. of N. Tex. v. Harvey,* 124 S.W.3d 216, 220 (Tex.App.-Fort Worth 2003, pet. denied). While the court must construe the allegations in favor of the plaintiffs, the court is not bound by legal conclusions. *Tex. Natural Res. & Conservation Comm'n v. White,* 13 S.W.3d 819, 822 (Tex. App.-Fort Worth 2000), *rev'd on other grounds,* 46 S.W.3d 864 (Tex.2001); *Tex. Parks & Wildlife Dep't v. Garrett Place, Inc.,* 972 S.W.2d 140, 143 (Tex.App.-Dallas 1998, no pet.); *Salazar v. Morales,* 900 S.W.2d 929, 932 (Tex.App.-Austin 1995, no pet.). When deciding a plea to the jurisdiction, a court must consider evidence "when necessary to resolve the jurisdictional issues raised." *Bland ISD v. Blue,* 34 S.W.3d 547, 555 (Tex.2000). The Texas Supreme Court has explained the approach to be taken when a governmental entity challenges the jurisdictional facts and explained the scope of that entity's burden:

> Then, in a case in which the jurisdictional challenge implicates the merits of the plaintiff's cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. The United States Supreme Court and all of the federal circuits have authorized federal district courts to consider evidence in deciding motions to dismiss for lack of subject matter jurisdiction. *If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. However, if*

*the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law.*

*Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 227 (Tex.2004) (internal citations omitted, emphasis added). The supreme court then stated that, "We acknowledge that this standard generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* at 228. The Texas Supreme Court recognizes that the procedure in such situations parallels summary judgment practice. *Id.* Going further, the court explained that, "By requiring the [governmental entity] to meet the summary judgment standard of proof in cases like this one, we protect the plaintiffs from having to put on their case simply to establish jurisdiction." *Id.* If there is no fact question on the jurisdiction issue, the trial court will rule on the plea to the jurisdiction as a matter of law. *Id.* at 227–28. Likewise, reviewing jurisdictional determinations may require appellate courts to examine the evidence supporting a claim in the same de novo manner it reviews a summary judgment. *Id.* at 228.

### B. Legal and Factual Sufficiency

A legal sufficiency challenge may only be sustained when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334 (Tex.1998), *cert. denied,* 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX. L. REV. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could, and disregard evidence contrary to the finding unless a reasonable factfinder could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005).

Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 450 (Tex.1996); *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.,* 77 S.W.3d 253, 262 (Tex.2002).

An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding. *Mar. Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406–07 (Tex.), *cert. denied,* 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).

### IV. Sovereign Immunity

The doctrine of sovereign or governmental immunity prohibits suits against

a governmental entity unless there has been a clear and unambiguous constitutional or statutory waiver of that immunity. *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex.), *cert. denied*, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998). This immunity from suit defeats a trial court's subject matter jurisdiction, which is never presumed. *Jones*, 8 S.W.3d at 638–39; *Tex. Air Control Bd.*, 852 S.W.2d at 443–44.

■ The initial determination this court makes is whether the municipality is performing a proprietary or a governmental function. *McKinney v. City of Gainesville*, 814 S.W.2d 862, 865 (Tex.App.-Fort Worth 1991, no writ). This determination is crucial because section 101.0215(b) states that the Texas Torts Claims Act "does not apply to the liability of a municipality for damages arising from its proprietary functions." TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(b) (Vernon 2005). Whereas if the action engaged in by a municipality is considered to be a governmental function, the TTCA does apply, and further analysis under the act is required to determine a municipality's potential liability. *McKinney*, 814 S.W.2d at 865. In this case, police protection and control are governmental functions. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215(a)(1). Therefore, the court must next determine whether an exclusion or exception to the limited waiver provisions of the Texas Tort Claims Act applies. *McKinney*, 814 S.W.2d at 866. If not, the limited waiver of governmental immunity provisions control. *Id.*; TEX. CIV. PRAC. & REM.CODE ANN. § 101.001, *et seq.* Initially, however, under Crisha's first issue, we must determine if an exemption is present under section 101.055(2) of the Texas Tort Claims Act.

## V. Operation or Use of a Motor Vehicle

■ In her first issue, Crisha asserts error in the trial court's conclusion that she did not allege injury from the operation or use of a motor vehicle after she pleaded and offered evidence that Vattana was run over by two different Arlington police cars driven by two different Arlington police officers. First, there is no such finding made by the trial court. Conclusion of Law No. 7 reads "The death of Vattana Pakdimounivong was not caused by the operation or use of a motor vehicle *by Officer Haven* and, therefore, Arlington's governmental immunity has not been waived." [Emphasis supplied.] This finding is explained by the trial court's Conclusion of Law No. 8, which reads "The motor vehicle driven by Officer Haven did no more than furnish the condition that made injury possible to [Vattana]." These are correct holdings by the trial court. The car driven by Officer Haven did not strike Vattana, but was the one from which Vattana escaped and then jumped into the middle of traffic on the highway. Thus, Vattana's personal injury and subsequent death did not arise from the operation or use of this motor vehicle. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 2005). The "condition" conclusion is not challenged.

With regards to Officers Vire and Grimmet, who were driving the vehicles that did strike Vattana after he escaped onto the freeway, and hence were motor vehicles whose operation did cause injury, Conclusion of Law No. 9 reads "There was no evidence to support a finding of conscious indifference or reckless disregard with regard to the driving behavior of Officers Vire and Grimmett." The trial court further found in Finding of Fact No. 20 that "Officers Vire and Grimmett did not have time to react or take evasive action when

[Vattana] jumped onto the Interstate in front of their vehicles." We agree.

The Texas Tort Claims Act waives immunity from liability and suit in a number of circumstances. But the act includes a subchapter entitled "Exclusions and Exceptions" listing circumstances in which its waiver of immunity provisions do not apply. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 101.051–066 (Vernon 2005); *City of San Antonio v. Hartman,* 201 S.W.3d 667, 672–73 (Tex.2006). Among those is section 101.055(2) governing emergency situations:

> This chapter [Texas Tort Claims Act] does not apply to a claim arising:
>
> . . . .
>
> (2) from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others. . . .

Tex. Civ. Prac. & Rem.Code Ann. § 101.055(2).

We first address the "emergency" language of the statute. Initially, Crisha asserts that to invoke the emergency exception, Arlington had the burden under a plea to the jurisdiction to prove, as a matter of law, that its police officers were operating an emergency vehicle at the time of the incident in question. We categorically reject this assertion for the simple reason that such language is not found in the statute. *See id.* Further, Arlington does not argue, nor should it, that any of the officers involved were responding to an emergency call when Vattana, while being transported to jail, placed himself in the middle of highway traffic. Rather, Arlington argues that the officers were reacting to an emergency situation—Vattana attempting to escape from Officer Haven's patrol car. Arlington is correct.

■ Crisha contends that the evidence is legally and factually insufficient to support a finding that the Arlington officers were responding to an emergency situation. The undisputed evidence indicates that when the police officers became aware of an attempted or ongoing escape, overhead flashing lights were activated, radio contact was attempted, and vehicles began to slow down and move to the side of the road. Vattana threw himself onto the highway, after breaking out the window, and was struck. It should be noted at this point that during the first incident involving Vattana and Officer Vire's police car when he kicked out the window, he did not exit the vehicle, nor was the vehicle moving at the time. Therefore, we hold there is legally and factually sufficient evidence that when Vattana flung himself from the moving police car the officers were reacting to an emergency situation.

■ Crisha urges that the term "emergency," which is undefined in the statute, should be defined in accordance with the Pattern Jury Charge which indicates that an emergency does not occur if it is caused by any negligence of the person claiming the emergency. 2 Comm. on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges, PJC 3.3 (2d ed.2003). We reject this contention because this inferential rebuttal is a defense to a negligence allegation and is thus inapplicable, and also, in fact, does not actually define the term "emergency."

Crisha asserts that the emergency exception does not apply to improper lookouts or the failure to maintain a proper following distance. *See* Tex. Transp. Code Ann. § 545.062(a) (Vernon 1999); *Deviney v. McLendon,* 496 S.W.2d 161, 166–67 (Tex.Civ.App.-Beaumont 1973, writ ref'd n.r.e.); *Higginbotham v. Ritchie,* 367

S.W.2d 210, 212 (Tex.Civ.App.-Fort Worth 1963, no writ). The cases she cites in support of this assertion are negligence cases not involving a plea to the jurisdiction related to the Texas Tort Claims Act. Furthermore, there was no evidence presented to the trial court regarding improper look-out or failure to maintain a proper following distance. Accordingly, we reject Crisha's contentions involving improper look-out and failure to maintain a proper following distance as inapplicable to this case.

Because we hold that the police officers were reacting to an emergency situation and that Crisha's related additional arguments are without merit, we must now address whether the officers' actions were in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if their actions were taken with conscious indifference or reckless disregard for the safety of Vattana.

■ Crisha contends that the officers' failure to seatbelt and failure to apply leg restraints in such a manner so that Vattana could not free himself amount to noncompliance with laws and ordinances applicable to emergency action. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.055(2). Crisha relies on *City of San Antonio v. Higle*, 685 S.W.2d 682 (Tex.App.-San Antonio 1984, writ ref'd n.r.e.) for the proposition that prescribed departmental policies satisfy the "laws and ordinances" exception. In the instant case, Officer Nguyen, one of the officers at the scene of Vattana's arrest, testified that he applied the leg restraints properly and as tight as he could. In deposition testimony, the other officers at the scene concurred that they believed Vattana was seat-belted in the second patrol car. Although Officer Haven subse-

quently received a citation from Internal Affairs for Vattana not being belted in the patrol car, he only received "counseling" as discipline.[1] Furthermore, it is unclear from the record whether this citation was issued for violating a prescribed departmental policy or because, as it was referred to by Crisha's counsel during the deposition, for the violation of a "general order." In light of this ambiguity and the underlying circumstances, it is impossible for us to conclude that Officer Haven's citation is evidence of noncompliance with the laws and ordinances applicable to emergency action. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.055(2). Further, the "emergency" occurred when Vattana escaped the vehicle, not when he chose to extricate himself from his restraints.

■ Therefore, we turn to the inquiry of whether the officers' actions were taken with conscious indifference or reckless disregard for the safety of Vattana. Because "conscious indifference" and "reckless disregard" are not defined in the statute, we give each its ordinary meaning. TEX. GOV'T CODE ANN. § 312.002 (Vernon 2005). The supreme court has often interpreted these terms to require proof that a party knew the relevant facts but did not care about the result. *See, e.g., Fid. & Guar. Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 576 (Tex.2006); *Dillard Dep't Stores, Inc. v. Silva*, 148 S.W.3d 370, 373–74 (Tex. 2004); *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex.2001); *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 922 (Tex.1981). As detailed above, there is no evidence that Officer Vire, Officer Grimmet, or any other officer did not care what happened to Vattana. Accordingly, we find that the officers' actions were not taken with conscious indifference or reck-

---

1. Officer Haven also testified that "counseling" is "one of the lowest forms of discipline" and basically consists of being counseled not to let it happen again.

less disregard for the safety of Vattana. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.055(2).

Having dismissed all of Crisha's arguments, her first issue is overruled.

## VI. Use of Tangible or Real Property

In her second issue, Crisha asserts error on the part of the trial court by concluding that she did not allege injury from the condition or use of tangible or real property. Specifically, she alleges Vattana's death was caused by the improper application of handcuffs and leg restraints.

 Whether the leg restraints were properly placed on Vattana as the magnitude of the evidence indicates, or were not properly placed on him, is not a determinative question. Nor is the same question regarding handcuffs. This is so because their application or use supplied a condition that allowed Vattana to break out of the window and throw himself on the freeway in front of oncoming traffic. Their failure, if any, did not cause the window to break, nor cause Vattana to crawl out the broken window, nor cause Vattana to throw himself on to the highway in front of oncoming traffic. Vattana did these things. Here, this property did not cause the injury, it at most created a condition, a lack of restraint, that allowed Vattana to cause his own death. Property does not cause injury if it does no more than furnish the condition that makes the injury possible. *Bossley*, 968 S.W.2d at 343. Crisha's second issue is overruled.

## VII. Findings of Fact and Conclusions of Law

In her third issue, Crisha asserts that the trial court erred in refusing to make additional findings of fact and conclusions of law. We disagree.

According to Rule 296 of the Texas Rules of Civil Procedure, parties may request findings and conclusions "[i]n any case tried in the district or county court without a jury." TEX.R. CIV. P. 296. Whether an evidentiary hearing is a non-jury trial as contemplated by Rule 296, thus requiring findings and conclusions, is not determinative here. A trial court is required to file findings of fact and conclusions of law within twenty days after a timely request is made. TEX.R. CIV. P. 297. Here, the trial court initially filed findings and conclusions. Thus the issue is whether the trial was required to file *additional* findings and conclusions.

 Upon a party's timely request for additional findings, the trial court "shall file any additional or amended findings and conclusions that are appropriate." TEX.R. CIV. P. 298. Additional findings are not required if the original findings and conclusions properly and succinctly relate the ultimate findings of fact and law necessary to apprise the party of adequate information for the preparation of the party's appeal. *Main Place Custom Homes, Inc. v. Honaker*, 192 S.W.3d 604, 612 (Tex. App.-Fort Worth 2006, pet. filed); *see also Jamestown Partners, L.P. v. City of Fort Worth*, 83 S.W.3d 376, 386 (Tex.App.-Fort Worth 2002, pet. denied). An ultimate fact is one that would have a direct effect on the judgment. *Main Place*, 192 S.W.3d at 612. If the refusal to file additional findings does not prevent a party from adequately presenting an argument on appeal, there is no reversible error. *Jamestown Partners*, 83 S.W.3d at 386. If the requested findings will not result in a different judgment, the findings need not be made. *Main Place*, 192 S.W.3d at 613.

 Here Crisha requested a number of additional findings and conclusions, none of which, if found, would have resulted in a different judgement. *See id.* Among oth-

er findings and conclusions, the trial court made explicit findings and conclusions that Vattana was a "decedent," Arlington was performing a governmental function, an emergency situation existed, and that Officers Vire and Grimmett did not act with conscious indifference or reckless disregard for the safety of Vattana. In light of the trial court's original findings and conclusions, each of the requested additional findings and conclusions is unnecessary to support the trial court's judgment. The trial court's original findings and conclusions properly and succinctly relate the ultimate findings of fact and law necessary to apprise Crisha of adequate information for the preparation of her appeal. *See id.* at 612. Moreover, Crisha was not prevented from adequately presenting an argument on appeal, as she has done, because each of the requested additional findings and conclusions are subsumed in the original findings and conclusions, thus there is no reversible error. *Jamestown Partners,* 83 S.W.3d at 386.

Crisha's third issue is overruled.

## VIII. Unverified Plea to the Jurisdiction

In her final issue, Crisha complains that the trial court erred in considering the factual allegations in the Arlington's plea to the jurisdiction, because it was unverified. We disagree.

Texas Rule of Civil Procedure 93 lists sixteen matters that must be verified by affidavit. Tex.R. Civ. P. 93. An attack on the lack of subject matter jurisdiction based on governmental immunity is not among those listed. *Id.*

Crisha relies on *Sparks v. Bolton* and *Olivas v. Barajas* for the contention that, although not mentioned in Rule 93, pleas to the jurisdiction must be verified.

*Sparks v. Bolton,* 335 S.W.2d 780, 785 (Tex.Civ.App.-Dallas 1960, no writ); *Olivas v. Barajas,* 285 S.W.2d 894, 895 (Tex.Civ. App.-San Antonio 1955, no writ). *Sparks* involved a plea in abatement, not a plea to the jurisdiction, thus any mention of a plea to the jurisdiction is mere dicta. *Sparks,* 335 S.W.2d at 785. *Olivas* simply asserts the proposition that a "plea to the jurisdiction is essential," but cites no rule or case law in support of that contention. *Olivas,* 285 S.W.2d at 895. Moreover, two courts of appeal have held that a plea to the jurisdiction is not of the type that needs to be verified. *See Ab-Tex Beverage Corp. v. Angelo State Univ.,* 96 S.W.3d 683, 688 (Tex.App.-Austin 2003, no pet.); *Am. Pawn & Jewelry, Inc. v. Kayal,* 923 S.W.2d 670, 672 (Tex.App.-Corpus Christi 1996, writ denied).

We are aware of our holding in *City of Fort Worth v. Robles,* 51 S.W.3d 436, 444 (Tex.App.-Fort Worth 2001, pet. denied), *disapproved on other grounds, City of Grapevine v. Sipes,* 195 S.W.3d 689, 695 (Tex.2006). In that case, the court noted that Rule 93 provides that "[a] pleading setting up any of the following matters, *unless the truth of such matters appears of record,* shall be verified by affidavit," and held that the record established that the City of Fort Worth's assertions establishing its immunity from suit were matters that appeared of record. *Id.* (emphasis in original). The court then held that the city fell within the exception provided in Texas Rule of Civil Procedure 93 and thus was not required to verify its plea. *Id.* at 444–45. This holding is correct on the facts of that case.

 However, we hold in this case that based on the plain language of Rule 93, no verification is required unless specifically enumerated in the Rule or included in

catch-all paragraph[2] 16 of Rule 93. We expressly reject the implication of *City of Fort Worth v. Robles* that a plea to the jurisdiction is required to be verified. Crisha's fourth issue is overruled.

### IX. Conclusion

Having overruled all of Crisha's issues, we affirm the judgment of the trial court.

2. "Any other matter required by statute to be pleaded under oath." Tex.R. Civ. P. 93(16).