

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 02-14-00140-CV**

AZZAM HUSSAMI                                                    APPELLANT

V.

CLEAR SKY MRI AND                                              APPELLEE
DIAGNOSTIC CENTER AT
DENTON, INC.

----------

FROM COUNTY COURT AT LAW NO. 2 OF DENTON COUNTY
TRIAL COURT NO. CV-2012-03242

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

The dispute in this case is over payment for MRI services provided to a client of Appellant Azzam Hussami. Appellee Clear Sky MRI and Diagnostic Center at Denton, Inc. (Clear Sky MRI Denton) sued Hussami to recover

---

[1]*See* Tex. R. App. P. 47.4.

payment for those services. After a bench trial, the trial court found that Clear Sky MRI Denton had provided services to Hussami's client under a letter of protection (LOP) that constituted a contract and that Hussami had failed to comply with the agreement. The court awarded Clear Sky MRI Denton $5,640 in damages plus $11,360 in attorney's fees. In six issues, Hussami challenges the trial court's findings, its admission of evidence, its damages award, and its award of attorney's fees for Clear Sky MRI Denton. Because we hold that the evidence supports the trial court's judgment and that Hussami has not shown that the trial court abused its discretion by admitting the challenged evidence, we affirm.

## Background

Hussami, a lawyer, signed the LOP under which he agreed to pay for MRI services for his client out of settlement proceeds that his client received. When Clear Sky MRI Denton attempted to collect its fee, Hussami disputed whether Clear Sky MRI Denton was the same entity that had provided the services and to which he had given the LOP. Based on Hussami's failure to pay, Clear Sky MRI Denton sued him for breach of contract.

At trial, Hussami asserted as a defense that there was a defect of parties and that he had not provided the LOP to Clear Sky MRI Denton or done business with it. He alternatively asserted the defense of anticipatory repudiation on the ground that the parties had amended the LOP to reduce the amount owed and that Clear Sky MRI Denton had repudiated the amendment.

2

The evidence presented at trial included a fax sent to Hussami requesting the LOP. The fax stated that the approximate cost for services would be $2,900. The fax letterhead had the name "Clearsky Imaging @ Denton." The bottom of the letter listed the address, telephone number, and fax number for a "N. Dallas Diagnostic Center" and "Clearsky Imaging @ Brookhaven."

Hussami faxed the requested LOP and addressed it to "Clear Sky MRI." His fax cover page was addressed to "Clearsky MRI", and the LOP included a physical address for Clearsky MRI on Las Colinas Drive. In the LOP, Hussami stated that "[t]he only way your patient/my client can recover for his medical expenses will be either settlement of this case or by Jury verdict." The LOP acknowledged that Hussami understood "that your clinic will provide a cervical and lumbar MRI" at the request of the clinic treating Hussami's client.

The LOP further stated,

> it is agreed that we [Hussami's firm] will pay your office **all necessary and reasonable outstanding medical expenses** for [the client's] injury-related treatment directly out of any settlement proceeds or payment resulting from a jury verdict provided that: (1) we received copies of all itemized bills and medical narratives from your office; (2) your office will sign medical records affidavits when presented from this office at no additional charge; (3) that there is a final settlement and actual recovery in this case with proceeds adequate to protect your fees; and, (4) that our office remain the attorney of record for this claim.

The LOP requested that "as [the client] continues to receive treatment for these injuries, please forward all medical records and *bills as they accrue.*" [Emphasis added.]

3

In May 2009, Hussami sent a letter requesting a complete medical report on his client; he addressed the letter to "Clear Sky MRI" and included the same Las Colinas Drive address.  The next month, Hussami received faxed copies of the client's records.  The cover page of the fax sending the records has the name "Clear Sky MRI & Diagnostic."  Reports of MRIs performed on the client were provided on letterhead with "Clearsky Imaging" at the top.  Other patient forms included in the provided records had the names "Clearsky Imaging" and "Clearsky MRI @ Diagnostic Imaging Centers, Inc." on them.

Thus, by this time, Hussami had received correspondence related to MRI services for his client, including his client's medical records, that included the names "Clearsky Imaging @ Denton," "Clear Sky MRI & Diagnostic," "Clearsky Imaging," and "Clearsky MRI @ Diagnostic Imaging Centers, Inc."  He had sent correspondence on the matter to "Clear Sky MRI" and "Clearsky MRI."  As of this point, Hussami had not expressed any confusion or uncertainty over the name of the entity that was providing services to his client.

In 2010, Clear Sky MRI Denton moved offices after experiencing a fire in the building and problems with one of its machines.  In 2011, the fax number was forwarded to a new office location.  The business kept the same phone number until 2012.

In March 2011, Hussami sent a letter to "Clear Sky MRI" stating that his client had settled and requesting a thirty percent reduction of the $5,640 incurred.  The address to which Hussami sent this letter was the Las Colinas Drive address

4

for Clear Sky MRI that Hussami had included in his previous faxed correspondence. Clear Sky MRI Denton agreed to take a thirty percent reduction.

In August 2011, Hussami mailed a letter to Clear Sky MRI at the same Las Colinas Drive address. The letter stated that he was enclosing a check for $3,090,[2] but it was returned to him with a printed notation from the postal service that the time for forwarding had expired. The forwarding address was printed on the envelope, however. Hussami did not mail a check to the new address.

On December 13, 2011, in response to a request by Hussami, Jackson Jacob, president and general manager of Clear Sky MRI Denton, sent a letter to Hussami confirming that Clear Sky MRI Denton was not in bankruptcy and was in good standing. On December 22, 2011, Jacob sent another letter following up on a message he had left with Hussami a few days prior. The letter stated that Clear Sky MRI Denton was making a demand for full payment of $5,640, and if it did not receive full payment by December 28, it would start collection proceedings. Jacob testified at trial that he demanded the full amount because when Jacob talked to Hussami after sending the December 13 letter, Hussami said "he [was] not going to pay, he wanted more information" and that every time he talked to Hussami, Hussami "came up with excuses" not to pay.

---

[2]A copy of the check is not in the record.

In January 2012, Hussami sent Jacob a letter stating that during the course of his client's treatment, he had received correspondence from other entities with Clearsky in the name. Hussami listed the entity names in the letter and stated that before he could conclude that Clear Sky MRI Denton was "the exclusive company that did business as one of the above, and that it is therefore the company [he] should sent [sic] the settlement amount to, [he] need[s] a certificate indicating that [Clear Sky MRI Denton] is the registered company with one of those names."

In December 2012, a year after its demand for full payment, Clear Sky MRI Denton filed suit against Hussami for breach of contract. At the trial, Jacob testified that the post office box address on the billing statements it had provided to Hussami had continued to be a correct payment address for the company even after its move. He acknowledged that the billing statements only gave the name of the company as "Clearsky MRI at Denton" instead of its full name, but he explained that the billing software he used did not allow for use of a name as long as the company's full name.

Jacob further testified that he had explained to Hussami that Clear Sky MRI Denton's previous owner had multiple corporations with similar names, but Jacob had bought only Clear Sky MRI Denton. When the previous owner died, his son had taken over, and at some point the bank that had financed the companies had forced the entities into bankruptcy. Jacob, who had worked for the original owner before his death, bought Clear Sky MRI Denton in 2007.

6

Jacob testified that when he acquired the company, the staff continued to use the paperwork that was already there.

To establish its attorney's fees, Clear Sky MRI Denton's attorney testified. The attorney stated that much of the time he spent on the case was responding to discovery requests by Hussami, including "unneeded discovery requests, 87 interrogatories, 60 request[s] for production, [and] 27 request[s] for admissions on a level one case."[3] When the attorney sought to introduce an itemized statement of his billing records, Hussami objected on the ground that the attorney should have provided the billing records before trial. The trial court overruled the objection, allowing the records and the attorney's testimony about them under the business records exception.

At the conclusion of Clear Sky MRI Denton's attorney's testimony, Hussami argued that on December 13, 2011, Clear Sky MRI Denton demanded payment of $3,090 but then on December 22, 2011, it repudiated the amendment agreeing to reduce the bill by thirty percent and demanded payment of the full amount. Hussami argued that under civil practice and remedies code section 38.002,[4] he had thirty days to pay after a demand for the just amount—"[n]ot any amount, the just amount," which Hussami argued was $3,090. He argued that

---

[3] *See* Tex. R. Civ. P. 190.2 (1999, amended 2013) (setting out the discovery control plan applicable to a "level one" expedited action involving $50,000 or less and putting limits on the number of interrogatories and requests for production that a party may serve on another party).

[4]Tex. Civ. Prac. & Rem. Code Ann. § 38.002 (West 2015).

7

because Clear Sky MRI Denton did not give him thirty days to pay the $3,090 before demanding payment of $5,640, Clear Sky MRI Denton was not entitled to attorney's fees.

The trial court rendered judgment in favor of Clear Sky MRI Denton for $5,640 in damages, attorney's fees for $11,360, and an additional amount of conditional appellate attorney's fees.

The trial court filed the following pertinent findings of facts:

4.    Clear Sky was asked [to] provide diagnostic medical test for a patient . . . under a letter of protection to be issued by Hussami, wherein Hussami would guarantee payment for reasonable and necessary expenses for the diagnostic medical testing requested by [the client]'s treating physicians out of the settlement or payment resulting from a jury verdict.

5.    Hussami issued the letter of protection to . . . Clear Sky.

6.    Clear Sky performed the testing requested by [the client]'s treating physicians relying on the letter of protection issued by Hussami for payment.

7.    Clear Sky submitted the diagnostic medical testing records and bills to the proper doctors for further treatment of [the client]. Further, Hussami used the diagnostic medical testing and billing records of Clear Sky to obtain a settlement from the adverse insurance carrier.

8.    Clear Sky complied with the terms of the contract.

9.    Hussami settled [the client]'s case, and Hussami requested that Clear Sky reduce the amount it was entitled to under the letter of protection.

10.    Hussami failed to comply with the agreement by failing to pay Clear Sky the funds pursuant to the contract and the agreed reduction.

11.    Clear Sky sent notice to Hussami demanding payment.

12. Clear Sky brought suit for breach of contract and an independent claim for attorney's fees under TEX. CIV. PRAC. REM. CODE § 38.001 et seq.

13. Hussami did not present credible or believable evidence of any of the denials or defenses plead.

The court also made the following conclusions of law:

14. Clear Sky and Hussami agreed that Clear Sky would perform the requested diagnostic medical test services and provide the records and bills to [the client]'s doctors and Hussami pursuant to the letter of protection.

15. Hussami agreed to pay Clear Sky out of the settlement or jury verdict on the case.

16. Clear Sky substantially relied to its detriment on the letter of protection issued by Hussami for payment and this reliance was foreseeable to Hussami.

17. This letter of protection amounts to a contract between Clear Sky and Hussami.

18. Clear Sky performed compensable work by rendering valuable services for Hussami and his client. . . . Hussami accepted the benefits of the contract by using the medical records and bills of Clear Sky for treatment of [the client] and the settlement of [the client]'s case. Hussami knew or should have known that Clear Sky expected to be paid for the services rendered.

19. Hussami failed to comply with the agreement and breached the contract by failing to pay Clear Sky the funds a reasonable time after the settlement funds were received.

20. Clear Sky complied with the terms of the contract.

21. This failure to comply by Hussami was not excused.

22. Hussami repudiated any benefit to the reduction by failing to perform his agreement to pay Clear Sky and his fixed intention to abandon the agreement and refusal to perform the agreement.

23. This breach of contract has caused damages to Clear Sky in the amount of Five Thousand Six Hundred Forty Dollars ($5,640.00).

24. Clear Sky complied with all conditions precedent prior to filing this suit.

25. Clear Sky incurred attorneys' fees in the reasonable and necessary amount of Eleven Thousand Three Hundred and Sixty Dollars ($11,360.00) through trial.

26. Clear Sky will incur an additional amount of attorneys' fees in the reasonable and necessary amount of Two Thousand Five Dollars ($2,500.00) if this matter is appealed to the court of appeals.

27. Clear Sky will incur an additional amount of attorneys' fees in the reasonable and necessary amount of One Thousand Five Hundred Dollars ($1,500.00) if this matter is appealed to the Texas Supreme Court.

28. Clear Sky has incurred reasonable and necessary amount of cost of court in the amount of Two Hundred Eleven Dollars ($211.00).

Hussami then filed a request for additional findings of fact and conclusions of law. The trial court did not make the requested additional findings and conclusions. Hussami now appeals.

## Standard of Review

A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions and are reviewable for legal and factual sufficiency of

the evidence to support them by the same standards.[5] We defer to unchallenged findings of fact that are supported by some evidence.[6]

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.[7] In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not.[8]

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the

[5]*Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *see also MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009).

[6]*Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 523 (Tex. 2014).

[7]*Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960).

[8]*Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered.[9]

## Discussion

### 1. Clear Sky MRI Denton rendered services for Hussami's client

In his first issue, Hussami contends that the evidence is legally and factually insufficient to prove that Clear Sky MRI Denton rendered services for his client. We disagree.

Jacob testified that the entity he owned was the same entity that had provided the MRI services and that had obtained the LOP from Hussami, and he explained why the forms used in correspondence with Hussami had similar but different entity names. He explained why the business's address had changed. And he testified about providing the medical records of Hussami's client to Hussami, which is evidence that his business had those medical records. In Hussami's questioning of Jacob, Hussami acknowledged that he had requested and received from Jacob the medical records for his client.

A reasonable factfinder could consider this evidence, and therefore we must consider it.[10] Jacob's testimony is more than a scintilla of evidence that

---

[9] *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

[10] *See Islas*, 228 S.W.3d at 651.

12

Clear Sky MRI Denton was the entity that performed the MRI services, and we therefore hold that the evidence was legally sufficient to support the trial court's finding to that effect.[11]

Hussami complains about the trial court's failure to make additional findings of fact about whether Clear Sky MRI Denton was the entity that provided services to his client, and he complains that the evidence provided by Jacob was testimonial rather than documentary evidence. We overrule this portion of his first issue as to the requested additional findings of fact for the reasons provided in our analysis of his third and fourth issues.[12] As for the fact that Jacob's evidence was testimonial, Hussami provides no argument for why testimonial evidence is not sufficient in this case, and he cites no authority in support of any such argument.[13]

Hussami points to the forms used by Jacob in correspondence as evidence that Clear Sky MRI Denton did not provide the services, but as we have already stated, Jacob explained the reason for the different entity names. Hussami also complains about the lack of evidence on various "vital fact[s]," such as "any documentary evidence showing that the acknowledgment of privacy practices, a necessary document before rendering service, was signed to

---

[11] *See Uniroyal Goodrich Tire*, 977 S.W.2d at 334.

[12] *See* Tex. R. App. P. 47.1.

[13] *See* Tex. R. App. P. 38.1(i).

Appellee." Hussami does not, however, explain why any of these missing "vital fact[s]" are relevant, and he cites no authority in support of any such argument.[14]

Hussami also argues that "the tax number of the Appellee and the tax on the Insurance form are different, which means they are different corporations." Hussami did not make this argument in the trial court, does not cite any authority demonstrating that both tax numbers are from the same governmental entity (as opposed to one federal tax number and one state tax number, for example), and does not explain how these numbers prove that the entity that provided the services to his clients is not the same entity that sued him in this case.[15] Because we cannot say that the evidence supporting the trial court's finding is so weak that the finding should be set aside, we hold that the evidence is factually sufficient.[16] We overrule Hussami's first issue.

## 2. Hussami breached the contract, and the breach was material

In his second issue, Hussami argues that the evidence is legally and factually insufficient to support a finding that he breached the contract or, alternatively, that any breach was material.

The evidence was undisputed that Clear Sky MRI Denton has not yet been paid for the services it rendered to Hussami's client even though Hussami's client

---

[14] *See id.*

[15] *See id.*

[16] *See Pool*, 715 S.W.2d at 635.

14

has received the proceeds from his settlement. Hussami claims that there was "conclusive evidence" that he complied with the agreement when he first attempted to pay by sending the check that was returned to him by the postal service. The trial court only had Hussami's word for it that the check was enclosed with that returned letter, and more pertinently, even accepting that the check was in the letter, Hussami was aware by the return of it that Clear Sky MRI Denton had not been paid. After the letter was returned to him, he repeatedly declined to pay. Hussami cites cases holding that payment was timely made when timely mailed, but those cases do not involve payment that was returned to the sender.

Hussami contends that the failure to pay was not a material breach of the agreement because the contract did not have a time for payment, and there was no evidence that he intended to never pay. Hussami argues that he raised the issue of timeliness in his pleadings but that the trial court made no findings on that issue in its findings of fact.

But as Hussami acknowledged, the trial court did find that Hussami failed to pay within a reasonable time after the settlement funds were delivered to Hussami's client. And though Hussami argues that there is no evidence that he refused to pay or intended to abandon the contract, the trial court was entitled to judge the credibility of the witnesses.[17] It therefore could have concluded from

---

[17] *Liberty Mut. Ins. Co. v. Burk*, 295 S.W.3d 771, 777 (Tex. App.—Fort Worth 2009, no pet.).

15

the testimony and the evidence of Hussami's communications regarding the payment that Hussami's repeated requests for more information from Clear Sky MRI Denton were merely a tactic to avoid payment.

Hussami argues that there was no evidence of a specific date of performance. When a contract does not fix the time for performance, it will be presumed that the agreement is to be performed within a reasonable time.[18] "What is reasonable depends on the facts and circumstances as they existed at the date of the contract" and is ordinarily a question of fact, "but when the facts are admitted or undisputed, then it becomes a question of law, which we review de novo."[19]

Here, the trial court determined that under the circumstances, Hussami did not pay within a reasonable time. The evidence shows that the parties agreed that Clear Sky MRI Denton would be paid from the settlement funds received by Hussami's client; that on July 28, 2011, Hussami received the funds from his client's settlement; that by December 2011, when Clear Sky MRI Denton demanded full payment, Hussami had not paid what was owed under the LOP; that Hussami continued to request more information from Clear Sky MRI Denton

---

[18]*DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160, 173 (Tex. App.—Fort Worth 2012, no pet.).

[19]*CherCo Props., Inc. v. Law, Snakard & Gambill, P.C.*, 985 S.W.2d 262, 266 (Tex. App.—Fort Worth 1999, no pet.).

rather than pay; and that by the time of the filing of this suit in December 2012, Hussami had still not paid.

Hussami contends that the evidence shows that he merely wanted to ensure that he was paying the right party, but the validity of this argument comes down to the credibility of the parties. As we stated above, the trial court, as the sole judge of credibility of the witnesses, determined that Hussami's explanations for his failure to pay were not credible. Crediting the evidence relied upon by the trial court, as we must,[20] we hold that sufficient evidence supports the determination that Hussami did not pay Clear Sky MRI Denton within a reasonable time.

Hussami argues that there was no evidence of various "vital issues," but he does not make any argument about why those issues are vital in this case and cites to no authority in support of any such argument.[21]

Hussami further argues that there was no showing of any injury due to the delay in payment, but the case he cites in support of his argument is not on point; that case involved a late payment on an installment contract, not a complete failure to pay what was owed under the contract.[22] He makes no other argument

---

[20] *See Liberty Mut. Ins. Co.*, 295 S.W.3d at 777.

[21] *See* Tex. R. App. P. 38.1(i); *Pakdimounivong v. City of Arlington*, 219 S.W.3d 401, 412 (Tex. App.—Fort Worth 2006, pet. denied).

[22] *Laredo Hides Co., Inc. v. H & H Meat Prods. Co.*, 513 S.W.2d 210, 216–17 (Tex. Civ. App.—Corpus Christi 1974, writ ref'd n.r.e.).

about why Clear Sky MRI Denton was not harmed by his complete failure to pay what he owed.

We overrule Hussami's second issue.

*3. The failure to include a finding on materiality does not prevent recovery*

In Hussami's third issue, he argues that Clear Sky MRI Denton cannot recover as a matter of law because there was no finding of the materiality of his breach of contract and there was no finding as to whether there was a material breach by Clear Sky MRI Denton that would have excused his performance. He also questions whether conclusions of law number nineteen, twenty-one, and twenty-two were supported by proper findings and were correct.

Hussami is correct that the trial court did not include in its findings of fact an express finding that Hussami's breach was material. The court's failure to do so, however, is not reversible error, because the trial court's failure to make such a finding has not prevented Hussami from presenting his argument on appeal, and he makes no argument that it had that result.[23] That being the case, Hussami has not shown that the trial court's failure to include that particular finding in its findings of fact has harmed him. As to his argument about Clear Sky MRI Denton's breach, the trial court specifically found that Clear Sky MRI Denton complied with the terms of the contract.

---

[23]*See* Tex. R. App. P. 44.1 (requiring harm for a trial court's error to be reversible).

18

Hussami further argues under this issue that Clear Sky MRI Denton "did not show that the delay has deprived [it] of the benefit of the benefit it reasonably expected under the agreement." This argument is specious. Hussami never paid Clear Sky MRI Denton, which is the exact benefit—in fact, the *only* benefit— Clear Sky MRI Denton expected to receive for performing the services under the agreement.

Hussami further argues that Clear Sky MRI Denton breached the LOP because "[b]y the letter of December 22, 2014, [Clear Sky MRI Denton] changed the contract as modified without any consideration, imposed a deadline of [its] own choosing to pay, not the reduced amount but the total amount." We assume he means Jacob's letter of December 22, 2011. Even had Hussami established that the December 2011 letter was a valid, binding modification of the LOP,[24] the trial court found that Hussami "repudiated any benefit to the reduction by failing to perform his agreement to pay Clear Sky and his fixed intention to abandon the agreement and refusal to perform the agreement." Hussami does not challenge that finding on appeal other than to challenge whether he performed within a reasonable time. Aside from the fact that Hussami has yet to pay for the services rendered, we have already held that the evidence supported the trial court's

---

[24] *See Walden v. Affiliated Computer Servs., Inc.*, 97 S.W.3d 303, 314 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("Texas courts have consistently adhered to the rule that a modification to a contract must itself be supported by consideration to be valid.").

19

finding that Hussami did not pay within a reasonable time and that he did not intend to pay.

Hussami argues that by providing him with Clear Sky MRI Denton's updated address and "requesting simply that the money be sent to them," Clear Sky MRI Denton led him "to reasonably believe" that strict compliance with the contract was not required, and thus the contract could not "be cancelled for late performance without first notifying" him that strict compliance would be insisted upon in the future. This argument is without merit. The evidence supports a finding that Clear Sky MRI Denton expected to be paid in a reasonable time— and providing Hussami with a correct address supports rather than contradicts that finding—and that it did not lead Hussami to reasonably believe otherwise. And even after Clear Sky MRI Denton demanded full payment, Hussami made *no* payment.

On the evidence, and after hearing testimony from Jacob and Hussami, the trial court could find that Hussami did not reasonably believe that Clear Sky MRI Denton did not expect payment. Additionally, the trial court could and did find that Hussami's excuses about not paying were not credible—that is, the problem was not that Hussami believed that he did not have to strictly comply with the contract but that Hussami did not intend to pay.

Hussami argues that Jacob's letter stating Clear Sky MRI Denton was not going to accept the reduced amount left him "with either paying the whole amount or not paying," as paying the reduced amount "would have been a

20

useless act when the letter itself unequivocally demand[ed] the whole amount under a threat of collection" and constituted a repudiation of the contract. He cites *Young v. Watson* in support of the proposition that "[w]here one of the parties repudiates the contract and absolutely refuses to perform the duties and obligations required of him, the other party need not go through the useless act of tendering performance."[25] This argument is unpersuasive; Clear Sky MRI Denton had already performed all of its duties and obligations under the contract. The only obligation of either party left to perform was for Hussami to pay, and the trial court determined that Hussami was refusing to uphold his side of the bargain.

Finally, Hussami argues that Clear Sky MRI Denton's "unilateral act of demanding the whole amount, not threatening after a notice that the whole amount would be requested, was outside the contract, and without consideration was unreasonable" and that Clear Sky MRI Denton "cannot unilaterally change fixed contractual rights and obligations in the middle of performance of the contract." The case he cites, however, relates to waiver of time of performance.[26] Hussami cites no cases for the proposition that when Hussami

---

[25]140 S.W. 840, 842 (Tex. Civ. App.—Galveston 1911, writ ref'd) ("One party to a contract is not required to tender performance when the other party thereto has declared that he will not accept such performance or will not do that which he had agreed to do in compensation or return for such performance.").

[26]*Laredo Hides Co.*, 513 S.W.2d at 220 (stating that when a creditor had allowed late payments in the past, "he could not summarily and unilaterally forfeit the contract without giving the debtor notice of his intention to require strict compliance with the times for payment, and a reasonable time within which to make payments which were in default at the time of giving the notice").

21

refused to pay anything, Clear Sky MRI Denton could not sue to recover what was owed under the contract.[27]

We overrule Hussami's third issue.

*4. The award is supported by the evidence*

Hussami's fourth issue questions whether the trial court's award has support in evidence. He argues that Clear Sky MRI Denton provided no evidence that the expenses were reasonable and necessary or that they fall under the protection of the LOP.

In the LOP, Hussami agreed to pay for a cervical and lumbar MRI as well as "all necessary and reasonable outstanding medical expenses for [the client's] injury-related treatment." Hussami argues that Clear Sky MRI Denton provided more than the cervical and lumbar MRI and that there was no evidence that the additional medical expenses were necessary and reasonable. He argues that he requested additional findings of fact and conclusions of law regarding the reasonableness and necessity of the additional services but that the trial court did not provide any.[28]

Regarding the necessity of the services, Hussami states that the LOP only called for a cervical and lumbar MRI as requested by the clinic treating

---

[27] *See* Tex. R. App. P. 38.1(i).

[28] *See* Tex. R. Civ. P. 298 (stating that a trial court shall file additional or amended findings and conclusions upon request and that no findings or conclusions shall be deemed or presumed by any failure of the court to make additional findings or conclusions).

22

Hussami's client. But the LOP further stated that as his client "continue[d] to receive treatment for these injuries, please forward all medical records and bills as they accrue." The LOP therefore contemplated that further services could be provided. And evidence at trial showed that these services were performed at the request of the doctor treating Hussami's client. Hussami cites no case law to support his argument that the services provided were not included under the LOP.

Regarding the reasonableness of the amounts, Hussami's arguments for why it was necessary for Clear Sky MRI Denton to prove reasonableness were that (1) the LOP obligated him to pay only for reasonable medical expenses and (2) under Texas law, a party seeking to recover the cost of completion in a breach of contract case has the burden to prove the damages are reasonable.

Hussami argues that his using the $5,640 billed by Clear Sky MRI Denton to make a demand on the insurance company and to obtain a settlement was not a concession that the amount Clear Sky MRI Denton charged for the services rendered fell under the LOP or that the amount was reasonable and necessary as a matter of law. Hussami cites no authority to support this argument. Hussami does, however, cite *Gossett* for his argument that proof of amounts charged does not, by itself, constitute proof that the charges are reasonable.[29]

---

[29] *Dallas Ry. & Terminal Co. v. Gossett*, 156 Tex. 252, 259, 294 S.W.2d 377, 383 (1956).

*Gossett* involved the recovery of damages in a personal injury case.[30] This case, however, is a breach of contract case, not a personal injury case.

Hussami also cites *Gosset* for the proposition that a plaintiff seeking to recover the cost of completion in a breach of contract case must prove up the reasonableness of the damages sought. This language about "cost of completion" comes not from *Gossett* but from *Mustang Pipeline*, a case involving remedial damages arising from a breach of a construction contract.[31] This case does not involve remedial damages under a construction contract.

Hussami cites to no case discussing how to prove up damages in a breach of contract case.[32] "Damages for breach of contract protect three interests: a restitution interest, a reliance interest, and an expectation interest," and "[t]he most common interest protected in breach of contract cases is the expectation, or benefit of the bargain, interest."[33] "The benefit of the bargain is measured by

---

[30] *See id.* at 253, 379.

[31] *See Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 200 (Tex. 2004); *McGinty v. Hennen*, 372 S.W.3d 625, 627 (Tex. 2012) (discussing *Mustang Pipeline*).

[32] *See* Tex. R. App. P. 38.1(i).

[33] *Qaddura v. Indo-European Foods, Inc.*, 141 S.W.3d 882, 888 (Tex. App.—Dallas 2004, pet. denied); *see also* Restatement (Second) of Contracts § 344 (1981).

the prevailing party's anticipated receipts and losses caused by the breach less any cost or other loss he has avoided by not having to perform."[34]

Hussami makes no argument about benefit-of-the-bargain damages, reliance damages, or restitution.[35] From the arguments and evidence at trial and the trial court's findings of facts and conclusions of law, Clear Sky MRI Denton sought and the trial court awarded damages to compensate Clear Sky MRI Denton for its expectation interests. Hussami cites to no case and makes no argument about the standard for proving up benefit-of-the-bargain damages or about how Clear Sky MRI Denton failed to meet that standard. He made no argument about how the trial court should have interpreted the term "necessary and reasonable outstanding medical expenses" as used in the LOP, about the relation between that term and Clear Sky MRI Denton's anticipated receipts under the agreement, or about how damages of $5,640 exceeded Clear Sky MRI Denton's expectation interest.

As to the trial court's failure to make the requested additional findings, a trial court's failure to do so is not reversible error if the refusal to file additional findings does not prevent a party from adequately presenting an argument on appeal.[36] Hussami has not made any argument about how the requested

---

[34] *Qaddura*, 141 S.W.3d at 889.

[35] *See* Tex. R. App. P. 38.1(i).

[36] *City of Arlington*, 219 S.W.3d at 412.

25

additional findings and conclusions would have resulted in a different judgment or how he was harmed by the trial court's failure to file findings of fact regarding the reasonableness or necessity of the amount charged.[37]

Hussami further argues that no affidavit under section 18.001 of the civil practice and remedies code[38] is in the record. Hussami cites no authority for the proposition that such an affidavit is required to demonstrate Clear Sky MRI Denton's breach of contract damages.[39] And although Hussami objected under this section to Clear Sky MRI Denton's attorney's billing records in connection with the award of attorney's fees (as discussed below), Hussami did not object at trial or in a motion for new trial to the failure to provide such an affidavit for the charges for the MRI services.[40] We overrule Hussami's fourth issue.

---

[37] *Id.* (holding that there was no reversible error because the appellant failed to show that additional findings and conclusions were appropriate or that the trial court's failure to make additional findings and conclusions prevented it from adequately presenting its argument on appeal); *see also Honeywell Int'l, Inc. v. Denton Cent. Appraisal Dist.*, 441 S.W.3d 495, 503 (Tex. App.—El Paso 2014, pet. denied) (same).

[38] Tex. Civ. Prac. & Rem. Code Ann. § 18.001 (West 2015).

[39] *See* Tex. R. App. P. 38.1(i).

[40] *See Jamshed v. Express Inc.*, 449 S.W.3d 871, 884 (Tex. App.—El Paso 2014, no pet.) (holding that the appellant waived on appeal his complaint about the failure to serve an affidavit under section 18.001 because he did not raise it at trial).

*5. Clear Sky MRI Denton is entitled to attorney's fees.*

In Hussami's fifth issue, he argues that Clear Sky MRI Denton is not entitled to attorney's fees because it made an excessive demand on Hussami by repudiating the agreed reduction and because it did not allow Hussami the time to pay. We have already rejected Hussami's argument with respect to the excessiveness of the demand. Further, the evidence shows that Clear Sky MRI Denton had requested payment from Hussami by at least December 22, 2011,[41] and it waited to sue until December 13, 2012, and we therefore reject his argument that he was not allowed time to pay before the suit was filed. We overrule Hussami's fifth issue.

*6. The trial court did not abuse its discretion by admitting the attorney's billing records*

In his sixth and final issue, Hussami argues that the trial court abused its discretion by admitting the billing records of Clear Sky MRI Denton's attorney. He contends that the admission of the records was harmful and led to an improper judgment because without the records, the evidence was not sufficient under *El Apple*[42] to show the reasonableness of the fees awarded.

---

[41]*See Goodin v. Jolliff*, 257 S.W.3d 341, 349 (Tex. App.—Fort Worth 2008, no pet.) ("No particular form of presentment is required; 'present' means simply a demand or request for payment.").

[42]*El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757 (Tex. 2012).

Hussami cites to a statute and references (but does not identify[43]) two other procedural rules to argue that the billing records should have been excluded because they were not provided to him fourteen days before trial. Hussami argues that when the attorney attempted to include the billing records, he "objected based on the 14 days required for *such an affidavit* that *those affidavits* need[] to be provided ahead of time, and based on Civil Practice and Remedies Code 18.[0]01, and local rules." [Emphasis added.] Section 18.001 states that an affidavit that the amount a person charged for a service was reasonable must be served on the other party to the case prior to trial.[44]

An affidavit under section 18.001 is one method by which a party may prove that the amount charged for a service was reasonable and necessary, but it is not the only method. The billing records used by the attorney in this case are not "an affidavit that the amount a person charged for a service was reasonable" under that section, and the records therefore did not need to meet the requirements for an affidavit under that section. Hussami does not elaborate on his argument; if his complaint is anything other than that the records do not meet the requirements of a section 18.001 affidavit or that the attorney failed to provide his billing records before trial, we are unable to discern it.

---

[43] *See* Tex. R. App. P. 38.1(i).

[44] Tex. Civ. Prac. & Rem. Code Ann. § 18.001.

28

As for Hussami's argument that he was harmed by the trial court's consideration of the billing records because the attorney's testimony was not sufficient to satisfy *El Apple*'s requirements, we disagree. Hussami does not argue Clear Sky MRI Denton's attorney used the lodestar method, and the record does not indicate that he used that method. For an ordinary breach of contract case, the lodestar method is not required to be used to calculate attorney's fees.[45] Thus, the attorney did not need to meet the requirements of *El Apple*.

Hussami further argues that attorney's fees were not recoverable based on chapter 38.002 of the civil practice and remedies code because "the 30 days window to tender the just amount was interrupted by [Clear Sky MRI Denton's] repudiation of the reduction on December 22, 2011." Clear Sky MRI Denton had requested payment from Hussami by, at the latest, December 22, 2011,[46] and it waited to sue until nearly a year later on December 13, 2012. Thus, it did not sue until more than thirty days had passed from the time it presented its claim.

Regarding Hussami's argument that before thirty days had passed from the demand, Clear Sky MRI Denton repudiated the contract by demanding the full amount, excusing Hussami from payment, we have already rejected his

---

[45]*See id.* §§ 38.003, 38.004 (West 2015) (setting out a presumption that the usual and customary attorney's fees for breach of contract cases are reasonable in a breach of contract case); *Ferrant v. Graham Assocs., Inc.*, No. 02-12-00190-CV, 2014 WL 1875825, at *7 (Tex. App.—Fort Worth May 8, 2014, no pet.) (declining to apply *El Apple* to ordinary, non-lodestar breach of contract cases).

[46]*See Goodin*, 257 S.W.3d at 349.

argument, and Hussami makes no new arguments on this point under this issue.

We overrule Hussami's sixth issue.

## Conclusion

Having overruled Hussami's six issues, we affirm the trial court's judgment.


/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

DELIVERED:  June 25, 2015