

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

---

No. 02-22-00069-CV

---

MANISH MEHTA, Appellant

V.

HANNAH MEHTA, Appellee

---

On Appeal from the 367th District Court
Denton County, Texas
Trial Court No. 19-2889-367

---

Before Kerr, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Kerr

**MEMORANDUM OPINION**

Manish Mehta (Husband) appeals from the trial court's final divorce decree. In two issues, he complains that the trial court abused its discretion by (1) awarding spousal maintenance to Hannah Mehta (Wife) because the evidence was legally insufficient to support the award and (2) failing to make a just and right marital-estate division because the evidence was factually insufficient to support disproportionately dividing the estate in Wife's favor. We will affirm the trial court's property division but reverse the spousal-maintenance award.

## I. Background

Husband and Wife married in July 2000. In September 2007, Wife gave birth to 29-week, preterm male triplets. One of the boys—A.M. (Andy)—is a "medically fragile child" because he was born with complex medical issues—both physical and neurological—that required, and continue to require, extensive medical care.[1] After the boys were born, Wife left outside employment to care for them. Husband continued to work.

Wife was the boys' primary caregiver and made medical decisions for them. Facilitating Andy's medical and educational needs and providing care to Andy—which was left entirely to Wife—required a substantial amount of time. Wife unilaterally made all of Andy's educational decisions but made educational decisions concerning

---

[1]We use a fictious name to identify A.M. *See* Tex. Fam. Code Ann. § 109.002(d).

the other two boys jointly with Husband. In 2016, Wife co-founded and began volunteering for Protect TX Fragile Kids, a nonprofit that advocates for medically fragile children in Texas.

In March 2019, Husband filed for divorce. The trial court signed temporary orders granting Wife exclusive use of the marital residence and required her to pay all monthly living expenses for the residence. The trial court also ordered Husband to pay Wife $2,760 per month in child support, as well as spousal maintenance of $2,000 per month from March 1, 2020, to October 1, 2020, and then $1,000 per month from November 1, 2020, to January 1, 2021.

While the divorce was pending, Wife negotiated a paid executive-director position with Protect TX Fragile Kids. The $30,000-per-year position was guaranteed for a year, effective June 15, 2021.

During a three-day bench trial in August 2021, the trial court heard from 13 witnesses and received testimony and exhibits regarding, among other things, Husband's and Wife's parenting skills; Andy's health conditions; Husband and Wife's disagreements over medical decision-making for Andy and over the severity of his medical conditions; Husband's and Wife's salaries; the community estate's assets and debts; and attorneys' fees. Both parties submitted proposed divisions of the community estate, with Husband proposing a 50/50 split and Wife proposing a 58/42 split in her favor.

3

The trial court's final divorce decree appointed Husband and Wife as joint managing conservators, awarded Wife the exclusive right to designate the children's primary residence, and set out a possession and access schedule for the children. The decree also awarded Wife $2,000 in monthly spousal maintenance for 36 months and ordered Husband to pay Wife $2,760 per month in child support. Finally, the decree divided the marital property, with Wife receiving a larger portion of the community estate.

At Husband's request, the trial court filed findings of fact and conclusions of law to which Husband later objected, seeking additional findings and conclusions. His request consisted of asking "what is the legal basis" for 14 of the trial court's legal conclusions. The trial court made no additional findings and conclusions.

Husband timely appealed and challenges the spousal-maintenance award and the marital-property division.

## II. Standard of Review

We apply the same standard of review—abuse of discretion—to both challenges. *E.g.*, *Sherman v. Sherman*, 650 S.W.3d 897, 899 (Tex. App.—Fort Worth 2022, no pet.) (spousal maintenance); *Neyland v. Raymond*, 324 S.W.3d 646, 649 (Tex. App.—Fort Worth 2010, no pet.) (property division).

A trial court abuses its discretion if it acts arbitrarily or unreasonably or if it does not analyze or apply the law properly. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011). Although a trial court does not abuse its discretion by deciding based on conflicting

4

evidence, sufficient evidence must nevertheless support the decision; therefore, the traditional sufficiency-review standards are relevant to our review. *Hamilton v. Hamilton*, No. 02-19-00211-CV, 2020 WL 6498528, at *3 (Tex. App.—Fort Worth Nov. 5, 2020, no pet.) (mem. op.); *In re S.C.*, No. 02-17-00377-CV, 2018 WL 5289370, at *3 (Tex. App.—Fort Worth Oct. 25, 2018, no pet.) (mem. op.). Stated another way, when we review if the trial court abused its discretion by ruling based on legally or factually insufficient evidence, "we must determine (1) whether the trial court had sufficient evidence on which to exercise its discretion and (2) whether the trial court acted reasonably in applying its discretion to those facts." *Hamilton*, 2020 WL 6498528, at *3.

When, as here, the trial court filed findings of fact and conclusions of law, the fact-findings have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). As with jury findings, a trial court's fact-findings on disputed issues are not conclusive, and, when the appellate record contains a reporter's record, an appellant may challenge those findings for evidentiary sufficiency. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We review the sufficiency of the evidence supporting challenged findings using the same standards that we apply to jury findings. *Catalina*, 881 S.W.2d at 297.

We may sustain a legal-sufficiency challenge—that is, a no-evidence challenge—only when (1) the record bears no evidence of a vital fact, (2) legal or evidentiary rules bar the court from giving weight to the only evidence offered to

5

prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). In determining whether legally sufficient evidence supports the challenged finding, we must consider evidence favorable to the finding if a reasonable factfinder could, and we must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We indulge "every reasonable inference deducible from the evidence" in support of the challenged finding. *Gunn*, 554 S.W.3d at 658 (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017)). Anything more than a scintilla of evidence is legally sufficient to support a finding. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727–28 (Tex. 2003).

When reviewing whether the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). When the party with the burden of proof appeals from a failure to find, the party must show that the failure to find is against the great weight and preponderance of the credible evidence.

*Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex. 1988); *see Gonzalez v. McAllen Med. Ctr., Inc.*, 195 S.W.3d 680, 681–82 (Tex. 2006).

We begin with Husband's second issue—the factual sufficiency of the evidence supporting the property division—because the trial court's property division is a factor that we consider in reviewing the trial court's spousal-maintenance award. *See Smith v. Smith*, No. 02-20-00370-CV, 2022 WL 1682427, at *2 (Tex. App.—Fort Worth May 26, 2022, no pet.) (mem. op.) (citing *Kelly v. Kelly*, 634 S.W.3d 335, 368 (Tex. App.—Houston [1st Dist.] 2021, no pet.)).

### III. Property Division

In his second issue, Husband argues that the trial court abused its discretion by failing to make a just and right division of the marital estate because the evidence is factually insufficient to support disproportionately dividing the community estate in Wife's favor.

### A. Applicable Law

In dividing a marital estate, the trial court must do so in a manner that it "deems just and right, having due regard for the rights of each party and any children of the marriage." Tex. Fam. Code Ann. § 7.001. A trial court has broad discretion in making a just-and-right division. *Halleman v. Halleman*, 379 S.W.3d 443, 452 (Tex. App.—Fort Worth 2012, no pet.); *Boyd v. Boyd*, 131 S.W.3d 605, 610 (Tex. App.—Fort

7

Worth 2004, no pet.). Without a clear abuse of discretion, we will not disturb that division. *Halleman*, 379 S.W.3d at 452; *Boyd*, 131 S.W.3d at 610.

"Community property does not have to be divided equally, but the division must be equitable." *Halleman*, 379 S.W.3d at 452. The trial court may consider "the disparity of incomes or of earning capacities of the parties," as well as "the spouses' capacities and abilities, benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial condition[s] and obligations, disparity of ages, size of separate estates, and the nature of the property." *Murff v. Murff*, 615 S.W.2d 696, 698–99 (Tex. 1981). "[N]o one factor is determinative," and "it is the overall property division that is important." *Felix-Forbes v. Forbes*, No. 02-15-00121-CV, 2016 WL 3021829, at *2 (Tex. App.—Fort Worth May 26, 2016, no pet.) (mem. op.). A disproportionate division, however, must have some reasonable basis. *Halleman*, 379 S.W.3d at 452.

## B. The trial court's property-division findings

Regarding dividing the community estate, the trial court found[2] that "there are no disputes as to the characterization and value of the community estate, save and except the following," which we summarize:

- Husband has a $8,194.11 judgment in his favor.

[2]In its findings and conclusions, the trial court stated that "[a]ny finding of fact that is a conclusion of law shall be deemed a conclusion of law" and vice versa.

- Wife "did not sign a document titled 'Promissory Note' in which [Husband]'s parents allegedly loaned [him]" $100,000. "Therefore, the Court did not assign a value to that alleged Promissory Note. Further, no evidence was produced or presented that this alleged Promissory Note was secured by any property of the parties."

- Husband "signed a document titled 'Promissory Note' and allegedly took out a [$50,000] personal loan from his parents . . . . Therefore, the Court did not assign a value to that alleged Promissory Note. Further, no evidence was produced or presented that this alleged Promissory Note was secured by any property of the parties."

- Husband was able to pay all his pretrial attorney's fees because he had access to, and used, community funds. After trial, Husband owed $14,000 in outstanding attorney's fees.

- At the time of trial, Wife owed $62,000 in outstanding attorney's fees because she could not access community funds to pay them. According to her attorney, "community funds existed that could be allocated to pay those attorney's fees."

- According to a divorce-lending specialist's testimony, Wife "would likely be able to qualify for a refinance of the marital residence if she were awarded the property division she requested and received child[-]support payments."

Husband has not challenged any of these fact-findings. Unchallenged fact-findings are entitled to the same weight as a jury's verdict and bind an appellate court unless either the contrary is established as a matter of law or no evidence supports the finding. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986); *Inimitable Grp., L.P. v. Westwood Grp. Dev. II, Ltd.*, 264 S.W.3d 892, 902 & n.4 (Tex. App.—Fort Worth 2008, no pet.). In other words, we defer to unchallenged fact-findings having some evidentiary support. *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 523 (Tex. 2014).

We have closely reviewed the evidence—among it the parties' proposed property divisions, the judgment in Husband's favor, the promissory notes signed only by Husband, and Husband and Wife's attorneys' billing statements and testimony regarding attorneys' fees—and have determined that some evidence supports these fact-findings.

## C. Analysis

By Husband's supposed calculations—which he does not include in his brief—the trial court awarded $251,420.93 of the net community estate to Wife and awarded $64,260.37 of the net community to him, yielding an 80/20 split in Wife's favor. According to Wife, who did include her calculations, the trial court awarded $317,444.16 of the net community to her and $240,762.44 to Husband, yielding a 57/43 division in Wife's favor.

Using the trial court's valuations in the divorce decree,[3] the trial court's findings, and the parties' agreed values reflected in their proposed property divisions, we arrived at a division much closer to Wife's, with Wife receiving 54% of the net community and Husband receiving the remaining 46%. We show our calculations here:

---

[3]Husband does not challenge these valuations.

| ASSET | VALUE | HUSBAND | WIFE |
|---|---|---|---|
| Chase Checking | $19,282.00 | $19,282.00 | |
| Chase Savings | $720.77 | $720.77 | |
| Citi Retirement Savings Plan | $39,976.28 | $39,976.28 | |
| Janus Henderson Traditional IRA | $1,354.73 | $1,354.73 | |
| Janus Vanguard IRA | $43,000.00 | $43,000.00 | |
| GE 401(k) | $47,611.52 | $47,611.52 | |
| Toyota Motor North America Retirement Benefits | $86,984.85 | $10,000.00 | $76,984.85[4] |
| 1999 Lexus RX300 | $500.00 | $500.00 | |
| Chase Checking (Veritaz Photography) | $1,635.27 | $1,635.27 | |
| Camera Equipment (Veritaz Photography) | $2,000.00 | $2,000.00 | |
| Verizon Stock Options | $0.00 | X | |
| Denton County Judgment | $8,092.95 | $8,092.95 | |
| Delta SkyMiles | Unknown | X | |
| 2019 Income Tax Refund | $7,879.00 | $7,879.00 | |
| COVID-19 Stimulus | $19,789.02 | $19,789.02 | |
| AIG Term Life Insurance Policy | $1,478.55 | $1,478.55 | |

---

[4]In the decree, the trial court explicitly awarded this portion of Husband's retirement benefits to Wife "[f]or attorney's fees incurred by and awarded to [her]" in the decree.

| | | | |
|---|---|---|---|
| Toyota Motor Life Insurance Policy | Unknown | X | |
| Health Equity Account | $7,585.27 | $7,585.27 | |
| Emergency Relief Distribution | $58,000.00 | $58,000.00 | |
| Non-Roth Partial Lump Sum Distribution | $45,000.00 | $45,000.00 | |
| 50% of 2/3 of Husband's 2021 Bonus | Unknown | X | |
| Marital Residence | $400,000.00 | | $400,000.00 |
| Capital One Bank Account | $48.62 | | $48.62 |
| Fidelity Rollover IRA | $2,753.30 | | $2,753.30 |
| Janus Henderson Roth IRA #1 | $36,431.76 | | $36,431.76 |
| Ameritrade Roth IRA | $3,126.40 | | $3,126.40 |
| Janus Henderson Roth IRA #2 | $99.89 | | $99.89 |
| Janus Henderson Traditional IRA | $98.22 | | $98.22 |
| Verizon 401(k) | $31,231.73 | | $31,231.73 |
| Janus Henderson Investors Account | $17,893.04 | | $17,893.04 |
| 2018 Toyota Highlander | $31,148.00 | | $31,148.00 |
| JetBlue Miles | Unknown | | X |
| American Airlines Miles | Unknown | | X |
| 50% of 2/3 of Husband's 2021 Bonus | Unknown | | X |
| Mortgage Escrow Account Refund | $3,822.10 | | $3,822.10 |
| **TOTAL ASSETS** | **$917,543.27** | $313,905.36 | $603,637.91 |

| LIABILITY | VALUE | HUSBAND | WIFE |
|---|---|---|---|
| Citi Credit Card | $130.31 | $130.31 | |
| Chase Credit Cards (Veritaz Photography) | $171.58 | $171.58 | |
| Alleged Debt Owed to Husband's Parents | No value assigned | X | |
| Pledge Owed to Gospel of Asia | $2,000.00 | $2,000.00 | |
| Fidelity Loan | $27,600.94 | $27,600.94 | |
| Husband's Attorney's Fees | $14,000.00 | $14,000.00 | |
| Mortgage Owed on Marital Residence | $179,603.04 | | $179,603.04 |
| Note Secured by 2018 Toyota Highlander | $27,273.72 | | $27,273.72 |
| Gabriel Lawn Service | $3,200.00 | | $3,200.00 |
| Wife's Attorney's Fees | $62,000.00 | | $62,000.00 |
| Chase Credit Card | $5,048.37 | | $5,048.37 |
| 2021 Estimated Property Taxes on Marital Residence | $9,068.62 | | $9,068.62 |
| **TOTAL LIABILITIES** | **$330,096.58** | **$43,902.83** | **$286,193.75** |

Based on these calculations, the total net community estate was $587,446.69; Husband received $270,002.53 (46%), and Wife received $317,444.16 (54%).

As noted, the trial court must divide community property equitably, not equally, and if the division is reasonable, we will not disturb it on appeal. *See Halleman*,

13

379 S.W.3d at 452. Here, several factors support the unequal property division, including:

- Husband has bachelor's and master's degrees in business while Wife has a bachelor's degree in secondary education.

- Wife left the workforce in 2007 to care for the couple's children and did not return to the workforce until becoming executive director of Protect TX Fragile Kids in June 2021.

- A disparity exists between Husband's $140,000 annual salary and Wife's $30,000 annual salary.

- Wife assumed responsibility for the mortgage.

- Wife is and has been the primary caregiver of the couple's children, one of whom has medically complex needs.

To successfully challenge a trial court's property division, a party must demonstrate from evidence in the record that the division was so unjust that the trial court abused its discretion. *Barber v. Barber*, No. 02-21-00291-CV, 2022 WL 4105363, at *2 (Tex. App.—Fort Worth Sept. 8, 2022, no pet.) (mem. op.). Based on the factors listed above, the trial court's property division was not against the great weight and preponderance of the credible evidence, and Husband has thus failed to show that the slightly disproportionate property division in Wife's favor was so unjust that the trial court abused its discretion. Accordingly, we overrule Husband's second issue.

### IV. Spousal Maintenance

Husband argues in his first issue that the trial court abused its discretion by awarding Wife spousal maintenance because the evidence was legally insufficient to

support that award. Within this issue, Husband asserts that the trial court failed to make sufficient findings of fact and conclusions of law to allow him to present his appeal. We start by discussing the law regarding spousal maintenance. We will next address whether the trial court's findings and conclusions were sufficient. Finally, we will address the merits of Husband's complaint.

## A. Applicable law

Spousal maintenance is "an award in a suit for dissolution of a marriage of periodic payments from the future income of one spouse for the support of the other spouse." Tex. Fam. Code Ann. § 8.001(1). Spousal maintenance's purpose is "to provide temporary and rehabilitative support for a spouse whose ability to support herself has eroded over time while engaged in homemaking activities and whose capital assets are insufficient to provide support." *Sherman*, 650 S.W.3d at 899 (quoting *In re Marriage of Hallman*, No. 06-09-00089-CV, 2010 WL 619290, at *5 (Tex. App.—Texarkana 2010, pet. denied) (mem. op.)).

Section 8.051 of the Texas Family Code governs a spouse's eligibility for spousal maintenance. *See* Tex. Fam. Code Ann. § 8.051. As relevant here, a trial court may order spousal maintenance only if (1) "the spouse seeking maintenance will lack sufficient property, including the spouse's separate property, on dissolution of the marriage to provide for the spouse's reasonable needs" and (2) the maintenance-seeking spouse

15

(A) is unable to earn sufficient income to provide for the spouse's minimum reasonable needs because of an incapacitating physical or mental disability;

(B) has been married to the other spouse for 10 years or longer and lacks the ability to earn sufficient income to provide for the spouse's minimum reasonable needs; or

(C) is the custodian of a child of the marriage of any age who requires substantial care and personal supervision because of a physical or mental disability that prevents the spouse from earning sufficient income to provide for the spouse's minimum reasonable needs.

*Id.* § 8.051(2). Here, the parties do not dispute that the trial court did not award spousal maintenance under subsection (A), which does not apply here. *See id.* § 8.051(2)(A). We are thus concerned only with subsections (B) (the ten-year-marriage subsection) and (C) (the disabled-child subsection). *See id.* § 8.051(2)(B)–(C).

A spouse seeking maintenance under the ten-year-marriage subsection must rebut the presumption that maintenance under that subsection is not warranted unless she has been diligent in

(1) earning sufficient income to provide for the spouse's minimum reasonable needs; or

(2) developing the necessary skills to provide for the spouse's minimum reasonable needs during a period of separation and during the time the suit for dissolution of the marriage is pending.

*Id.* § 8.053(a). But if a spouse seeks maintenance under the disabled-child subsection, "the presumption in [S]ection 8.053(a) does not apply and the spouse is not required to present evidence that [she] ha[s] exercised diligence in earning sufficient income or

16

in developing the necessary skills to provide for [her] minimum reasonable needs."

*Kelly*, 634 S.W.3d at 366.

## B. Findings of fact and conclusions of law

In addition to its property-division fact-findings, the trial court made the following findings and conclusions relating to the spousal-support award:

- The trial court made numerous fact-findings concerning how Andy is a "medically fragile child" with special and chronic medical and educational needs and describing the substantial care and supervision that Wife—as Andy's primary caregiver—provides.

- Wife is "gainfully employed as the Executive Director of the non-profit organization she co-founded called Protect TX Fragile Kids," her salary is $30,000, and the "position is guaranteed for one year, starting June 15, 2021."

- "The Court finds under the circumstances presented in this case, [Wife] is eligible for maintenance under the provisions of Texas Family Code [C]hapter 8. Accordingly, [Husband] is ordered to pay as maintenance the sum of two thousand dollars ($2,000.00) per month to [Wife] . . . ."

Husband objected to the trial court's legal conclusion that Wife was eligible for spousal maintenance under Chapter 8 of the Family Code because no evidence supported the conclusion. In his request for additional findings and conclusions, he asked the trial court to provide the legal basis for its spousal-maintenance legal conclusion as well as for 13 other conclusions. The trial court made no additional findings or conclusions. Husband complains that this failure has "left [him] to guess as to the trial court's decision on an ultimate issue in this case, where there are

17

multiple grounds for Wife's award of spousal maintenance under Chapter 8 of the Texas Family Code."[5]

Texas Rule of Civil Procedure 298 provides that, within ten days after a trial court files original findings and conclusions, any party may request specified additional or amended findings or conclusions.[6] Tex. R. Civ. P. 298. But additional findings are not required if the original findings and conclusions properly and succinctly relate the ultimate fact-findings and legal conclusions necessary to give adequate information for the party to prepare its appeal. *Pakdimounivong v. City of Arlington*, 219 S.W.3d 401, 412 (Tex. App.—Fort Worth 2006, pet. denied). An ultimate fact is one that would have a direct effect on the judgment. *Id.* There is no reversible error if the lack of additional findings does not prevent a party from adequately presenting an argument on appeal. *Id.* "The controlling issue is whether the circumstances of the particular case require the party to guess at the reasons for the

---

[5]Wife's pleadings did not specify the statutory grounds within Chapter 8 upon which she was relying in seeking spousal maintenance, nor did the divorce decree state the specific statutory basis for the spousal-maintenance award.

[6]We express no opinion about whether Husband's request directed at the trial court's spousal-maintenance-eligibility legal conclusion—"What is the legal basis for Conclusion of Law 5?"—made alongside nearly identical queries directed at 13 other legal conclusions is sufficiently specific. *See* Tex. R. Civ. P. 298; *Stuckey Diamonds, Inc. v. Harris Cnty. Appraisal Dist.*, 93 S.W.3d 212, 213 (Tex. App.—Houston [14th Dist.] 2002, no pet.) ("A request for additional findings must be specific; it cannot be buried among minute differentiations or numerous unnecessary requests." (citing *Vickery v. Comm'n for Law. Discipline*, 5 S.W.3d 241, 254 (Tex. App.—Houston [14th Dist.] 1999, pet. denied))).

trial court's decision." *In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d 373, 382 (Tex. App.—Dallas 2013, no pet.).

Here, the ultimate issue is whether Wife meets the statutory spousal-maintenance-eligibility requirements under Chapter 8 of the Family Code. The trial court divided the marital property and made findings and conclusions regarding the characterization and value of the community estate, Wife's annual salary, and Wife's eligibility for spousal maintenance under Chapter 8. And the parties agree that Wife was theoretically eligible for spousal maintenance only under the ten-year-marriage or the disabled-child subsection. We thus conclude that the trial court's original findings and conclusions are sufficiently specific to allow Husband to adequately present his complaints on appeal—which he did by arguing Wife's ineligibility for spousal maintenance on all possible applicable bases—so we overrule Husband's complaint regarding the trial court's not making additional findings and conclusions.

## C. The Spousal-Maintenance Award

To be eligible for spousal maintenance, Wife—as the requesting spouse—had to prove that (1) she would lack sufficient property post-divorce to provide for her minimum reasonable needs and (2) she met the requirements of either the ten-year-marriage or the disabled-child subsection. *See* Tex. Fam. Code Ann. § 8.051(2)(B), (C). Husband argues that the evidence is legally insufficient (1) to show Wife would lack sufficient property going forward to meet her minimum reasonable needs; (2) to rebut the presumption against a spousal-maintenance award under the ten-year-marriage

19

subsection; and (3) to prove that caring for Andy prevents her from earning sufficient income to provide for her minimum reasonable needs.

Neither the Family Code nor caselaw defines "minimum reasonable needs." *Martinez v. Martinez*, No. 02-21-00353-CV, 2022 WL 17986023, at *2 (Tex. App.—Fort Worth Dec. 29, 2022, no pet.) (mem. op.) (citing *Slicker v. Slicker*, 464 S.W.3d 850, 860 (Tex. App.—Dallas 2015, no pet.)). Rather, the trial court determines a spouse's minimum reasonable needs on a case-by-case, fact-specific basis. *Id.* "While a list of expenses is helpful, such a list is not the only evidence upon which a trial court can determine a person's 'minimum reasonable needs.'" *Diaz v. Diaz*, 350 S.W.3d 251, 254 (Tex. App.—San Antonio 2011, pet. denied) (op. on reh'g). Still, the key word here is "evidence."

At trial, Wife provided no itemized list of monthly expenses, nor did she testify about them. But some evidence exists concerning mortgage and property-tax expenses of the marital residence that Wife was awarded. That evidence showed that the monthly mortgage payment was about $2,032 and that based on the home's estimated 2021 property taxes, Wife could expect to pay about $756 per month in property taxes. *See Diaz*, 350 S.W.3d at 255 (considering mortgage interest, property taxes, and homeowner's insurance costs in determining spouse's minimum reasonable needs). But no evidence established any other monthly expenses—although Wife undoubtedly has them—such as food, utilities, clothing, medical expenses, child-care costs, or the monthly automobile and insurance payments on the Toyota Highlander.

20

*See Howe v. Howe*, 551 S.W.3d 236, 257 (Tex. App.—El Paso 2018, no pet.) (reversing award of post-divorce spousal maintenance where "record [was] devoid of information about whether Wife lacked minimal reasonable needs without spousal support," and "[t]here was no development of her monthly fixed and variable expenses"); *Amos v. Amos*, 79 S.W.3d 747, 750 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.) (considering transportation, clothing, and child-care costs in determining spouse's minimum reasonable needs); *In re Marriage of Hale*, 975 S.W.2d 694, 698 (Tex. App.—Texarkana 1998, no pet.) (considering utilities, automobile-payment, insurance, gas, groceries, credit-card, credit-union-dues, medical, and clothing costs). Without any evidence of her non-housing-related expenses, based on the actual trial evidence Wife's monthly minimum reasonable needs were only $2,788.

Regarding whether Wife's property sufficed to meet her minimum reasonable needs, Husband asserts that based on her salary and the property Wife received in the divorce—the home, numerous retirement accounts, the investment account, child support, and "various other assets"—Wife's property was sufficient. In determining the sufficient-property/minimum-reasonable-needs issue, courts consider the spouse's monthly income, the value of the spouse's separate property,[7] the value of the property awarded to the spouse through dividing the marital estate, and child-support payments. *See* Tex. Fam. Code Ann. § 8.051; *In re Marriage of Elabd*, 589 S.W.3d 280,

---

[7]The parties agreed that there was "no separate estate from either party."

285 (Tex. App.—Waco 2019, no pet.); *Howe*, 551 S.W.3d at 257; *Diaz*, 350 S.W.3d at 255. Also as part of its inquiry, "the trial court may consider the liquidity of the assets awarded and their ability to produce income." *Schafman v. Schafman*, No. 01-20-00231-CV, 2022 WL 962466, at *6 (Tex. App.—Houston [1st Dist.] Mar. 31, 2022, no pet.) (mem. op.). But "[w]hen considering the assets awarded in a divorce, the law does not require the spouse to spend down long-term assets, liquidate all available assets, or incur new debt simply to obtain job skills and meet short-term needs." *Id.* Wife was thus not required to sell the home or the Toyota Highlander to meet her present needs. *See id.*; *see also Smith*, 2022 WL 1682427, at *11 ("Husband cites no authority for the proposition that Wife was required to sell her ten-year-old vehicle—her only transportation source—to show that she did not have sufficient property for her needs. Husband provided no evidence that Wife had other transportation available to her and does not explain how Wife would be able to find a sufficient job without transportation."). Wife was similarly not required to incur the penalties and tax consequences from liquidating retirement accounts. *See Martinez*, 2022 WL 17986023, at *5; *Smith*, 2022 WL 1682427, at *11.

These assets aside, Wife was awarded (1) the $48.62 in cash in the Capital One bank account; (2) the $17,893.04 in the Janus Henderson investment account;[8] and (3) the $3,822.10 mortgage-escrow-account refund. After subtracting the $3,200 debt

---

[8]According to the account statement, this is a non-retirement account.

to the lawn service and the $5,048.37 in credit-card debt, Wife was left with about $13,515 in liquid assets, which when divided over the 36-month-spousal-maintenance term would leave her with about $375 per month in additional assets. Considering this amount, along with monthly child support of $2,760 and Wife's monthly salary of $2,500,[9] Wife has $5,635 in total monthly income, which exceeds her $2,788 in evidence-based monthly minimum reasonable needs by $2,847. We must therefore conclude that legally insufficient trial evidence supported the implied finding that Wife would lack sufficient property on the marriage's dissolution to provide for her minimum reasonable needs. Accordingly, the trial court abused its discretion by awarding Wife spousal maintenance; we thus need not address Husband's remaining arguments within this issue. *See* Tex. R. App. P. 47.1. We sustain Husband's first issue.

## V. Conclusion

Having sustained Husband's first issue, we reverse the spousal-maintenance award in the final divorce decree and render judgment that Wife take nothing on her spousal-maintenance claim. We affirm the remainder of the final divorce decree.

---

[9]This amount represents Wife's gross monthly salary. The only trial evidence of her salary was of her gross annual salary ($30,000). No evidence of her net salary after taxes and other deductions was presented.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered:  May 18, 2023